# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

| 3 | 659 |
| 40 | 263 |

SAMUEL S. THOMPSON *et al. vs.* WILLIAM H. EDWARDS *et al.*

August Term, 1869.

1. Where a bill of review is asked to be filed, the court cannot look into the evidence in order to see if the decree sought to be reviewed is erroneous; that is the proper office of the court upon an appeal. The errors of law must be apparent upon the face of the decree, to authorize a bill of review.

2. A decree was had requiring trustees to retain 1000 dollars, and pay it into court, subject to its future order, to reimburse vendees for certain timber privileges, the value of which was arrived at by indirect estimate, which the vendor had permitted his vendor to retain, and also referring the cause to a commissioner to ascertain the reasonable value of such privileges; and the cause was subsequently dismissed without the 1000 dollars being paid as required, or without any report by a commissioner. HELD:

> That there was such apparent error on the face of the decree dismissing the bill, that it was error to refuse to allow a bill of review to be filed.

3. A bill was filed enjoining the sale of property under a trust made to secure purchase money on real estate, on the ground of defective title; a supplemental bill was filed setting up an alleged outstanding title, other than that mentioned in the original bill, and a further second supplemental bill alleged that the defendant was seeking to collect, and had brought suit for that purpose, the purchase money in a foreign court, and had attached the property of one of the complainants in that court, and asked him to be enjoined from so proceeding. No answers were filed to the supplemental bills. The court below dissolved the injunctions though the order doing so does not plainly show what injunction the motion was made to dissolve. HELD:

> 1. It does not matter that no answer was made to the first supplemental bill, as a reference to the matter set up in it by a copy of a bill filed against the defendant claiming a part of the land, shows that the claim is wholly unfounded.

2. That the court having dissolved both the injunctions, it is fair to presume that the motion was to dissolve both.

3. The dissolution of the injunction on the original bill carried with it the dissolution of the injunction in the second supplemental bill.

4. If a charge in a bill is denied in the answer, and no evidence sustains the bill, the matter alleged in denial must prevail.

5. A reservation of timber privileges by a vendor, who covenants with general warranty, to his vendor, can be estimated in value and the amount abated from the purchase money due from the vendee.

6. Where a vendor conveys with covenants of general warranty, and adverse titles are set up which the vendor buys in, it is no objection that the conveyances for such bought in titles are made to the vendor, in a suit by the vendee claiming an abatement of purchase money for defective titles.

Samuel S. Thompson, Philip P. Dandridge, Robert M. T. Hunter, and Robert H. Maury, purchased of William Edwards certain tracts of land, lying in Kanawha county, containing in the aggregate 10,375 acres, subject to certain reservations which reduced the amount to 9,119 acres, on the 17th of June, 1854, for which they agreed to pay 35,000 dollars in sundry installments. Edwards conveyed with covenants of general warranty on the 1st day of October, 1854, and the grantees executed a trust on the land to secure the unpaid purchase money. The grantees filed a bill in the circuit court of Kanawha county, in November, 1857, alleging that they paid the installments as they fell due, prior to October 1st, 1857, when there remained an unpaid balance of 3,500 dollars due October 1st, 1857, 6,000 dollars due October 1st, 1858, and 12,000 dollars due October 1st, 1859, with interest. They then refused to pay any more on said lands because the title thereto was defective, about one-third of the land being claimed and actually held by other persons. That certain Messrs. Keeney's lived upon and claimed to own about 1,500 acres of the 9,119 acres; that John Jarrett and Andrew Porter claimed about 1,500 acres of the same; that Matthew P. Wyatt and John Thompson claimed about 400 acres, and John L. Cole about 50 acres. That all the persons actually lived upon, and had

owned for many yeaas, the lands claimed by them respectively. Deeds to them for the lands were filed with the bill. The bill further alleged that the land as purchased by them was underlaid with bituminous and cannel coal, and was purchased on account of its mineral value, and if the claim of the Keeney's and others was valid, the value of the land was materially diminished, for the portion claimed by them was the best part of the land, and laid between the residue of the tract and the Kanawha river, and so divided it that the remaining part of it was worthless and of no value. That Edwards represented his title good, and concealed the fact that there were other claimants to the land at the time of the sale; that they were ready and willing to comply with their contract whenever Edwards would make good the title. That the trustees had advertised the land for sale under the trust; that as Edwards was a non resident of the State, they had no indemnity in the event of their not being able to evict the claimants Keeney's and others, if they should pay all the purchase money, as Edwards might become insolvent or dispose of or cover up his property, being a non resident and beyond the process of the court. The bill asked that Edwards and the claimants mentioned, together with the trustees, might be made parties to the bill, and that the latter be restrained from selling under the trust until after the defective title be rendered clear and perfect; that the claimants be required to state under what titles they and each of them held, and that Edwards be restrained and enjoined from collecting the unpaid bonds due October 1st, 1857.

Edwards answered admitting the formal parts of the bill to be true, but denying that he made any representations other than those mentioned in the deed; that the parties investigated the title for themselves by counsel, and had been enquiring into the subject of the purchase six months before making it. He denied that Jarrett, Porter, Wyatt, Thompson or Cole, actually held any land within the lines as conveyed by him to the complainants, or that they had any title paramount to that conveyed to the complainants; that

if they did claim any land, they were only entitled to such as they could establish by legal proceedings to be paramount to the title conveyed by respondent. As to the claim of the Keeneys the respondent denied that they had any title paramount to that conveyed by him, for so much of their claim as extended into the survey so conveyed; that he was not responsible for what·they claimed, but only for what they established by law; and also denied that they had any possession beyond the boundary of the survey conveyed by him, which would confer on them any title paramount thereto. That the complainants should resort to their actions of trespass to oust the claimants,—they being, as he alleged, mere trespassers. He insisted there was no jurisdiction in a court of equity to grant the relief, and that he was only responsible under his general warranty, after the complainants had been evicted, or a judgment at law ascertained the defect in the title. That such had always been held to be the law in Virginia, and the fact of the respondent being a non resident ought not to take the case out of the influence of the rule. He further insisted that the invoking of other parties into court was an invitation and instigation to such other parties to set up claims which otherwise would not have been done. He also denied all charges of fraud and misrepresentation in the sale.

Cole and the Keeneys answered, setting up their claims and the use and occupation of the lands respectively held by them and their ancestors and vendors for a long time, and denied the right of the complainants to bring them before the court in the controversy pending between them and Edwards. Wyatt made a similar answer, as also did Porter.

On the 20th of October, 1858, the complainants filed a supplemental bill, alleging that since the filing of the original bill, one William.D. Green had instituted a suit in equity in the circuit court of Spottsylvania county, Virginia, against the complainants and William H. Edwards and others, claiming that he was the equitable owner of 15-32 parts of the land sold by Edwards to the complainants, and

that he prayed an attachment against the money due from the complainants to Edwards. That they had no notice of the claim of Green until they were served with process, and that they were advised that the proceedings of this latter suit prevented them from paying any of the purchase money due to Edwards until the decision of the suit of Green, independently of the grounds of injunction in the original bill, which they did not, however, waive. They asked that Edwards be made a party defendant, and that the injunction granted in the original bill be perpetuated. This supplemental bill was taken for confessed.

On the 31st of January, 1859, Edwards moved to dissolve the injunction theretofore awarded, which was "for the present" overruled. And the court ordered, that unless the complainants before the 15th of March, 1859, instituted proper proceedings at law to eject the adverse claimants from the land conveyed to the complainants by Edwards, that the injunction should be deemed dissolved as of the 31st day of January, 1859; but in case such proceedings should be instituted and prosecuted with vigor, then the injunction was to continue in full force until a final decision of such proceedings. Leave was given the complainants to apply to the court, in the event that the claimants should succeed, for an abatement of the purchase money or a recission of the contract, as the rights of the parties might require.

On the 14th of February, 1859, the complainants filed a second supplemental bill, alleging that the defendant Edwards, (who was a resident of New York), had instituted proceedings to coerce the payment of the bonds, in the State and city of New York, and had attached the effects of R. H. Maury & Co.,—Maury being one of the complainants— in contempt of the order of injunction issued by the court; that the bonds were the joint bonds of all the complainants and it would be inequitable to drag Maury into a foreign jurisdiction and compel him to pay the whole amount of the bonds; That Edwards sheltered himself behind the terms of the first injunction and asserted his right to maintain his

action in New York because the injunction only restrained the trustees from selling, and did not in express terms forbid the suing on the bonds. The bill asked that Edwards be restrained from collecting the bonds by suit at law or otherwise, anywhere, until the further order of the court, and that he be attached for his contempt. This injunction was awarded by the judge in vacation.

The second supplemental bill was taken for confessed, and the cause set for a hearing at the May rules, 1859.

At the November term, 1859, it was ordered that the complainants should not be required to further prosecute suit against Cole; and the defendant agreed not to take any advantage of this dismissal, and the complainants agreed to waive any right of abatement of purchase money on account of Cole's claim.

On the 2d day of December an order was entered restraining Edwards from collecting the purchase money in New York, and he was ordered to appear and show cause why he should not be attached for contempt, in pursuance of a third supplemental bill which was in effect and substance the same as the second. The third supplemental bill appears to have also been taken for confessed.

On the 14th of December, 1863, the cause came on to be heard "on the motion to dissolve the injunction heretofore awarded in this cause on the bill and supplemental bills and exhibits filed in this cause." From this decree it appears that Edwards procured, in fee simple, the adverse claims of Robert Poor, by deed dated March 31st 1863, of William Thompson, (which appears to be the *John* Thompson claim), by deed dated March 30th, 1863, and of all the Keeneys (except Michael R. and Steirs J.,) Nancy Jarrett, widow of John Jarrett, Andrew Porter and Matthew P. Wyatt, by deed dated March 28th, 1863, except certain timber privileges reserved to Keeneys in their deed. The court ordered the dissolution of the injunctions, and ordered the trustees, who were permitted to sell the land, to retain the sum of 1000 dollars and pay the same into court, to meet the value of the timber privileges reserved to the

Keeneys. The cause was referred to a special commissioner for the purpose of showing the reasonable value of the timber privileges.

The suits in ejectment had been dismissed on the law side of the court in October, 1863, upon the presentation of the deeds above mentioned.

At the same term of the court at which the injunction was dissolved, one William J. Rand was appointed to act with the trustee Smith in the execution of the trust, it appearing by affidavit that the trustee originally appointed was so situated that he could not act. A sale was subsequently made by the trustees, and the Kanawha and Ohio Coal Company became the purchaser for the price of 20,000 dollars.

At the April term, 1864, the order in the cause states that the injunction having been dismissed at the December term, 1863, and no cause being shown for the continuance of the same as an original bill, it was ordered to be dismissed.

At the April term, 1866, the defendants asked leave to file a bill of review and supplemental bill praying the court to set aside the decrees of December, 1863, and April, 1864; but the court refused the filing of the bill of review, and also to set aside the decrees.

The bill of review alleged twelve grounds of error for setting aside the decrees of April, 1864, and December 1863. The first was, because no answers were filed to the three supplemental bills, and no motion was made to dissolve the injunctions awarded in two of them. The second was, because no answers having been filed, they were taken for confessed, and consequently all the allegations thereof were to be taken as true; that a serious cloud was thrown upon the title of Edwards by the claim of Green, and the injunction should not have been dissolved until it was shown not to exist or had been removed. (By reference to this claim of Green, which was set up in a copy of a supplemental bill filed by Green, and which copy was filed as an exhibit with the supplemental bill of the complainants in this cause,

it appears that the interest of Green had been purchased by Edwards, at a sale made under a trust, by John L. Maryee, trustee, in January, 1843, and that Edwards had purchased the remaining 17-32 parts of the tract from the owners thereof.) The third cause alleged was, that the original injunction was obtained in part upon the allegations that Michael R. Keeney, Steirs J. Keeney, John Jarrett, and John Thompson were in possession, and claiming to own, a part of the land, and that the decree did not show that the outstanding adverse claimants had been purchased out. The fourth error alleged was, that Robert Poor retained 100 acres of the land conveyed by Edwards. (This, it appears, was a part of the land reserved by Edwards in the sale to the complainants). The fifth error alleged that the face of the decree showed that certain parties had reserved the right to cut timber forever on the land; that there was no evidence to show that 1000 dollars was a sufficient compensation for the privilege of cutting timber thus reserved; that the deeds for outstanding titles, made a part of the decree, were made to the defendant Edwards. The eighth error was alleged to consist in the decree stating that all the outstanding titles were procured in fee, except the timber privileges. The ninth error alleged that the decree was erroneous in alleging that the cloud described in the supplemental bill was removed. The tenth error alleged error in the decree of April, 1864, because the bill was dismissed before the commissioner had reported the value of the timber privileges. The eleventh error was alleged to be in dismissing the bill before the trustees had paid into court the 1000 dollars required to be paid by the decree of December, 1863. The twelfth error was not considered by this court.

A great many depositions were taken in the cause; the court here notices all that bear upon the points determined upon them, and a formal statement of them is unnecessary.

The defendants appealed to this court, alleging error in refusing to allow the bill of review to be filed, and errors

in the decrees of April, 1864, and December, 1863, which are included in the errors before given, as charged in the bill of review.

*Lee* and *Nash* for the appellants.
*B. H. Smith* and *E. M. Stanton* for the appellees.

MAXWELL, J. The appellants purchased a tract of land from the appellee Edwards, and took a conveyance of the same with covenants of general warranty, and at the same time executed a deed of trust on the land to secure the payment of the unpaid purchase money. When default was made in the payment of one of the installments, the purchasers obtained an injunction to restrain the trustees from selling the land, as they were instructed to do by the vendor Edwards. After the injunction was obtained, three supplemental bills were filed. On the 14th day of December, 1863, the injunction was dissolved, and on the 16th day of April, 1864, the bill was dismissed.

And afterwards, on the 14th day of April, 1866, the appellants offered to file a bill to review these decrees, but the court refused to allow the bill to be filed on the ground that in its opinion there was no error in the two said decrees, or in either of them.

The appellants have appealed to this court, alleging error in the order refusing them permission to file their bill of review, and also error in the decree dissolving the injunction and dismissing their original bill. The bill of review proposed to be filed, alleges twelve distinct causes of error apparent on the face of the decrees sought to be reviewed. Assignment of error in the petition here claims four errors apparent on the face of the decrees complained of, for which it is claimed the bill of review ought to have been allowed to be filed, thus intending to abandon probably all the errors charged in the bill of review not here assigned as causes of error. Whether it was the design or not to abandon them, there seems to be nothing in them. And as to the first, second and third errors assigned here as ap-

parent on the face of the decrees sought to be reviewed, they are not errors, if errors at all, to be reached by bill of review.  Story's Eq. Pl., sec. 407.

The fourth cause of error assigned is, that the cause was dismissed before the report of commissioner Cole came in, and before the trustees paid the 1000 dollars into court.  By the decree dissolving the injunction it was ordered that the trustee.or trustees selling the land for the unpaid portion of the purchase money, retain the sum of 1000 dollars and pay the same into court, subject to the order of the court; and it was further ordered, that commissioner Cole state and report to the court an account showing the reasonable value of certain timber privileges mentioned in the decree.  It is manifest that this decree left the rights of the parties undetermined.  It is true that the court indirectly estimated the value of the timber privileges at not exceeding 1000 dollars, and directs its commissioner to ascertain their value, and directs the money to be paid into court, subject to the order of the court, leaving it to a future order of the court to determine what is to be done with it, and what amount is to be abated from the purchase money on account of the timber privileges.  But the court dismissed the bill in April, 1864, without any reference being made to the former decree, or to the rights of the parties arising under it.  For this, there is error in the decree of April 16th, 1864, and it is such apparent error, that it was error in the court to refuse to allow the bill of review to be filed to review it, but for no other purpose.

The causes of error in the decree of December 14th, 1864, dissolving the injunction, assigned here, are numerous, and will be considered in their order.

The first cause of error assigned is, that there were no answers filed to the three supplemental bills, and no motion made to dissolve the injunction awarded on the 12th day of February, 1859, upon the supplemental bill.  The reading of the order dissolving the injunction does not show plainly which or what injunction the motion was made to dissolve, but as the court dissolved both injunctions, the

fair presumption is, that the motion was to dissolve both; but whether it was or was not, is wholly immaterial, because a dissolution of the injunction on the original bill would necessarily carry with it the dissolution of the injunction awarded on the 12th of February, 1859, on the supplemental bill.

The second cause of error is that, "no answer having been filed to the three supplemental bills, they were taken for confessed and set for hearing; and at the hearing, all of their allegations are to be taken and considered as true. They disclose the fact that there was at the time of the dissolution, a serious shadow upon the title,—William H. Green claiming to own 15-32 parts of the land, and seeking to collect the unpaid purchase money from your orators. Edwards being a grantor with general warranty covenants, it was error in the court to dissolve the injunction until it was shown that the cloud did not exist, or that it had been removed."

The first supplemental bill charges that William H. Green had instituted a suit in the circuit court for Spottsylvania county, Virginia, claiming that the said Green is the equitable owner of 15-32 parts of the land sold by Edwards to the appellants, and attaches the money owing by them to Edwards on their purchase, and refers to a copy of an amended bill filed by Green for proof of the allegation. Upon examination of the copy referred to, the allegation of the bill is not sustained. If anything is shown, it is, that Edwards was the owner of the entire tract of land, and not that Green was entitled to 15-32 parts thereof.

The third cause of error assigned is that, "the original injunction was obtained upon the allegation that Michael R. Keeney, Steirs J. Keeney, John Jarrett, and John Thompson, were in possession of a part of the land sold by Edwards, claiming and holding it as their own. It appears from the face of the decree that these outstanding, adverse claimants, had not been purchased out; it was, therefore, erroneous to dissolve the injunction." As to Michael R. Keeney, he shows by his own evidence that he has no interest. The answer

of Edwards in the general denial, denies that Steirs J. Keeney has any interest. All that the bill shows is, that he conveyed what interest he may have had, to Laidley & Brown, as trustees, to secure a certain debt, and the equity of redemption only would have remained in him. Nothing is shown in the evidence as to his interest; and upon bill and answer it must be taken that he has no claim on any part of the land in controversy. The answer of Edwards, contained also in the general denial, denies that John Jarrett claims any interest in the land, and the weight of evidence is to sustain the answer.

The proof pretty fully establishes the fact that the John Thompson mentioned in the bill, and in the assignment of error, is the William Thompson who has released all his claims to Edwards.

The fourth cause of error assigned is that, "it appears from the deed of Robert Poor and wife, which is made part of the decree which dissolves the injunction, that Poor retains one hundred acres of the land conveyed by Edwards to your orators, with covenants of general warranty." It is plain from the evidence of Alvah Hansford, Sinnett and F. G. Hansford, that the one hundred acres reserved by Poor, is the one hundred acres laid down on the Sinnett map, and reserved in the conveyance from Edwards to the appellants.

The fifth cause of error is, that Moses W. Keeney, and others named, have reserved certain timber privileges on the land conveyed to appellants. This is a reservation that can be estimated in value, and the amount abated from the purchase money, as was attempted by the decree dissolving the injunction.

It is claimed in the sixth cause of error assigned, that there is nothing in the cause to show that the sum of 1000 dollars is a sufficient sum to compensate for the timber privileges reserved. How the court arrived at this amount does not very clearly appear, but it seems to have estimated that this sum was sufficient to cover the value of it, and a commissioner was directed to ascertain the amount. Alvah

Hansford, in his testimony, estimates the value of the loss of the land fronting on the creek, at about 500 dollars. It is not very certain what land this witness is referring to, but he seems to be referring to the land on which the timber privilege is reserved, and may be so understood; and if so, the court may very well have concluded that 1000 dollars would be ample to cover the value of the timber privileges reserved on the same land.

There can be nothing in the seventh assignment of error, that the deeds were made to Edwards instead of the purchaser of the land, because Edwards had conveyed with general warranty. It is claimed that the decree of April 16th, 1864, is erroneous, because the cause was dismissed before commissioner Cole made his report and the trustees paid into court the 1000 dollars as directed by the decree of December 14th, 1863. Both of these questions were considered when considering the cause of error assigned in the order refusing permission to file the bill of review.

There is error then, as before stated, in the decree of April 16th, 1864, because the cause was dismissed before commissioner Cole made his report, and before the trustees paid into court the sum of 1000 dollars as directed by the decree of December 14th, 1863, and before the said money was disposed of by order of the court.

Therefore, because of the error of the court below in refusing to allow the bill of review to be filed to review these errors in the decree of April 16th, 1864, and because of the errors themselves, the order of April 14th, 1866, and the decree of April 16th, 1864, will have to be reversed, with costs to the appellants, and the cause remanded for further proceedings to be had therein; but as the decree of April 16th, 1864, is reversed as far as it might have been reviewed upon bill of review, there will be no cause to allow the said bill to be filed if again offered in the court below.

The other judges concurred.

DECREE REVERSED.