WIEBOTTGHBY, J.,
delivered the opinion of the court.
The facts appearing to be material to the decision of the questions in this case appear to be in substance as follows:
The appellants, as executors of the will of Eendall Griffin, deceased, sold at auction May 3d, 1866, certain real estate situated in Richmond, known as the Wall street hotel, to the appellee, who bid therefor the sum of $9,900. The appellee claiming to have been excited by stimulants, on reflection and examination of his condition, became immediately dissatisfied with his purchase, and asked to be released. This being refused, he employed counsel to examine the title, who, on said examination, discovered the following apparent defects:
First. The property had originally belonged to one Wm. Cook, and from him descended to his heirs, and as one of said heirs, Martha E. Shore appeared to be the owner of one-sixth of the lot; and no record of an3* conveyance could be found from her to the testator.
Second, John W. Shore, another heir of one-sixth, appeared by the records to have executed two deeds of trust to a trustee to secure the payment of certain debts to the testator, and subsequently conveyed the same interest to the testator in satisfaction of said debts; but the trustee had not joined in the conveyance, thus leaving the legal title to such other sixth in said trustee.
Third. The will itself was claimed to be somewhat ambiguous in its terms, leaving *212 the power of the executors to sell somewhat in doubt.
In answer to these objections, it is claimed that the testator held the property adversely from 1846, for fifteen *years, and thus had a perfect title, which could not be disturbed. It appeared that he improved the whole lot in 1846. On the 3d of November 1849, Martha E}. Shore seems, by writing filed in the cause, to have admitted that these improvements were made with her consent. Up to that time, at least, it appears that the possession of the testator was as a tenant in common with Martha E). Shore.
By deed of May 20, 1848, said Martha 13. Shore had conveyed this one-sixth to a trustee, to secure the payment of $300 to the testator; and by deed of June 22, 1849, she had made a similar deed of trust to secure another sum of $300 to said testator. By deed of November 3, 1849, the same date of the writing relating to her consent to improvements, she conveyed other property absolutely to said testator; but no record could be found of an absolute deed of conveyance of this one-sixth.
The appellee, on receiving notice of these apparent defects, notified the appellant that, in consequence thereof, he should not perform the contract; and thereupon a bill for specific performance was filed on the 21st of May 1866, accompanied by a tender of a deed of the propertj' by the executors.
On the 27th of November 1866, a deposition of Joseph M. Marvin, the husband of said Martha 13. Shore, was taken, and he testified that a conveyance was made of this one-sixth interest to Mr. Griffin in the spring or summer of 1850. In his deposition he speaks of two notes of $300 each, and says they were settled by her selling her interest in the Wall street property to Mr. Griffin; and also her interest in all other property to which she had a right in Virginia.
With this evidence before him, the commissioner, on the 20th of May 1867, reports that “it seems that the conveyance of which he speaks, from Martha EJ. Shore, was the deed of November 3, 1849, which does not embrace *her interest in the Wall street hotel; and no other conveyance from her has been shown.”
Rrom this it would appear that the commissioner, notwithstanding the evidence of Marvin, that such deed was made in 1850, believed from,the facts that “no such deed could be found, and that some other deeds were made a short time before that; he was mistaken as to the absolute conveyance having been made. I think that an inspection of the whole record will show that this conclusion of the commissioner was not an unreasonable one; but, on the contrary, would very naturally have been inferred.
He also reports, that it does not clearly appear that Griffin had possession under color of title; nor that his possession was adverse or not the possession of his co-tenants ; nor that it was against parties who were under no disabilities; nor that it was sufficient in length of time, since the statute of limitations had commenced to run.
This report was confirmed, and a decree rendered August 10, 1867, dismissing the bill.
In November 1867, the executor of Rendall Griffin accidentally discovered a fee bill for recording a deed among the papers of Mr. Griffin, which led to a further search among the records; and thereupon an absolute deed of convejTance of the interest of Martha EJ. Shore in this property was found to have been made on the 28th of May 1850 to said Griffin. The failure to discover this deed appears to have arisen from the fact, that it was not found in the general index of the records.
The appellant immediately filed a bill of review, setting up these facts, and again claiming a specific performance. There is evidence in the case, showing that in March 1865 the residence of the testator was destroyed by fire, and with it a majority of his business papers were consumed.
The appellee resisted this bill of review, upon the ^ground that there was laches by the appellant, and that during the delay which had taken place since the sale, the property had greatly depreciated in value, and his own circumstances had also so greatly changed as to render it impossible for him to comply with the terms of the contract.
I think the weight of the testimony is that the property had materially diminished in value during this time.
I do not consider it necessary in determining the questions in this case, to consider at length only the second apparent defect in the title; the want of evidence that the one-sixth interest of Martha E). Shore had been conveyed to the testator E'endall Griffin; as this appears to have been the principal and most material objection to the title. When the first decree was rendered, this defect did not appear to have been supplied, and the title was to that extent in doubt, notwithstanding the evidence of Marvin, as he might so easily have been mistaken, unless the facts of the case show that' the testator had held possession adversely long enough to have perfected his title, notwithstanding this apparent defect. This question of adverse possession seems to have been the principal reliance of the appellant in opposition to the commissioner’s report and to the first decree.
Now, in the first place, the commissioner has reported that there is no evidence of adverse possession. At that time the conveyance of Martha E}. Shore did not appear and could not be found. I am unable to discover from an inspection of the record, that at that time there was any evidence that the testator claimed the possession of this one-sixth interest under color of title. True he was in the actual possession, but as a co-tenant with Martha E). Shore, as appears certainly as late as November 3rd, 1849, and, as to all that then appeared, so *213 continued. At that time although other property *was conveyed by her to Griffin this was not. So far as the evidence showed at the time of the first decree, except the very unsatisfactory deposition of Marvin, because of his liability to be mistaken under the circumstances, I cannot find that Griffin claimed to hold under color of title. Adverse possession does not depend upon matters of record. As against an older undisputed title such adverse possession must be shown positively by the party setting it up, and it may be and often is quite a disputed question.
The claim of title by adverse possession is rendered much more doubtful by the fact, that in the legislature which assembled at Wheeling, by the act of July 26, 1861, entitled “an act staying the collection of certain debts, it is provided that the time during which this act is in force shall not be computed in anj” case in which the statute of limitation, may come in question;” and this provision is again found in the act of February 8, 1862, relating to the same subjects; and in the acts of the Alexandria legislature of January 30, 1863, and January 23, 1865, to which may be added the act of March 2, 1866 chap. 77; though if this stood alone there might be doubts of its application to this case, as it is claimed that before that time the period of limitation had expired and rights had already vested; and also the acts of the body sitting at Richmond, claiming to be the general assembly of Virginia, of March 14, 1862, and February 23d, 1864, upon the same subject.
It is not for the purposes of this case necessary perhaps to decide upon the force and effect of these several acts, but they are proper to be considered, as at least casting a reasonable doubt upon the claim of the appellant to have had full title to the property in question by virtue of adverse possession for the period required by the statute of limitations.
This then, is, I think, quite plain:
First. That it was at least then quite doubtful, whether *Martha 33. Shore had conveyed her interest to the testator.
Second. That it was at least quite doubtful whether her original title had been overcome by an adverse possession of the testator.
This being so, the title of the testator was, at the time of the first decree, in a sta.te of at least reasonable doubt. It had been held so by competent and careful counsel after a thorough examination. The commissioner had so twice reported it; and the court below agreed with them upon this point, and I do not feel warranted in saying from the evidence, that such doubt was without reasonable foundation; and nothing occurred to change or clear up this doubt up to the time of filing the bill of review, ISTovember 30th, 1868.
It does not seem to me necessary to decide whether as a matter of fact he was entitled to the property by reason of adverse possession. Indeed he does not now rest the title upon adverse possession, but upon an absolute conveyance. But this did not then appear. If this conveyance is to be regarded as an ouster by the testator of his co-tenant, this ouster was not then shown. If the adverse possession depended upon this ouster, there was then no satisfactory evidence of this fact. The question then, was not -whether there was a deed, or whether there was adverse possession, but were these facts shown to the satisfaction of the court or to the reasonable satisfaction of the appellee; and as the evidence then stood, I do not think it was; and whatever may tie said as to the actual facts as they now appear, they were then at least matters of reasonable doubt, and so continued until November 30th, 1868, the time of filing the bill for review. In addition to this doubt, it may be said that the power of the executors to sell at the time he sold, is not beyond all reasonable question according to the terms of the will; nor would it have been impossible that there could have been something more than a *'bare legal title in the trustee of the deed of trust executed by John W. Shore; for it ■was not impossible that the debt secured thereby, had been assigned to some other person before the conveyance of John W. Shore to Fendall Griffin absolutely; in which case, such assignee would have an equitable interest in that portion to the amount of his claim.
While this reasonable doubt as to the title to a material part of the property -was in existence and could not be removed, I do not think the purchaser was compelled to comply with the terms of purchase. In the advertisement of sale, there was no intimation but that the title was perfectly clear. The bid must have been supposed to have been made with such an understanding. In Garnett v. Macon, 2 Brock. R. 185, 244, Ch. J. Marshall says: ‘ ‘In a contract for the purchase of a fee simple estate, if no incumbrance be communicated to the purchaser or be known to him to exist, he must suppose himself to purchase an unincumbered estate; and a court of equity will not interpose its extraordinary power of compelling a specific performance, unless the person demanding it can himself do all that it is incumbent on him to do.” On the same page, he says: “Both on principle and authority, I think it very clear, that a specific performance will not be decreed on the application of the vendor unless his ability to make such title as he has agreed to make, be unquestionable. See, also, Marlow v. Smith, 2 P. Wms. R. 198. In that case, the court say: “If there is the least doubt of the title (which was made to appear by the opinion of Sergeant Hooper and Mr. Webb), it would, by no means, be proper for the Court of chancery to compel the party to accept the title.” In Pincke v. Curteis, 4 Bro. Ch. R. 329, the solicitor general who was asking a specific performance, says: If there be a solemn doubt, I agree that the court will not compel the *214 purchaser to take it.” See, also, Rooke v. Kidd, 5 Ves. R. 647; Stapylton v. Scott, 16 Ves. R. 272. In Sloper v. Fish, 2 Ves. & Bea. R. 145, it was a doubtful question whether the deed was absolute or had been delivered as an escrow only. In Jervoise v. The Duke of Northumberland, 1 Jac. & Walk. R. 540, there was an uncertainty as to the nature of the estate. In Lowes v. Lush, 14 Ves. R. 547, it was a question of doubt whether the sale had been anticipated by an act of bankruptcy.
In all these cases, the question seems to have been, not what was the actual fact, but was there reasonable doubt about it; and in such cases, specific performance was not enforced. I would not hold that in a case where such doubt appears to be frivolous, or is set up as a mere pretext, when upon examination, there appears to be no foundation for such doubt, the contract would not be enforced; but only in a case of reasonable doubt either as to law or fact; and in this, I think, I am fully supported by all the authorities upon the 'subject.
But it is contended that such doubt might have been removed by a proper examination of the records. It is a fact that search was made by the appellee, and no deed of conveyance was found in the general index. The law requires that an index shall be made by the clerk of all deeds recorded; and I think if a deed is not found there, a party is authorized to presume that no such deed exists, or is recorded. I think that the index, in the contemplation of the legislature, in requiring it, was a general index, and not merely an index to each book. Besides, it does not appear that the deed was referred to in any index. The counsel says he examined the title, and searched the records of the Hustings court and the County court of Henrico, and he does not find this conveyance. It ought to be presumed that he made a proper search. He is shown to be competent and careful. This appears by the opinion he gave; and he did all I think that could be reasonably *expected of him as counsel for the vendee. He pointed out the apparent defects, and called upon the vendor to obviate these defects. But I think it may be said that it is the duty of the vendor, especially if he seeks a specific performance, and if apparent defects in the title are pointed out, to remove such defects, and to show that they are not so, and remove the doubts arising thereon. If, as he contends, this might have been done by a proper and lawful search, that is so much more reason why he should have done it. If he is unable to do it, it is not necessai'3r to say that it is his laches or negligence, but it is his misfortune. If his private papers have been burned, that is his loss. If other papers of his cannot be found, that is his misfortune. He must be not only prompt, willing and eager, but he must be able to do all on his part. He must not only have a good title, but he must show that he has such title, especially in a case of doubt, and where apparent defects are pointed out; and he must also show it beyond all reasonable doubt.
In Lloyd v. Collett, 4 Bro. Ch. R. 469, a purchaser, who had made a deposit on his purchase, was allowed to withdraw it, and abandon the purchase, because the, vendor had neglected to give him an abstract of his title from August 18, 1792, to March 25, 1793 ; and in the meantime there had been a material depreciation in the value of the property. See, also, Fordyce v. Ford, Id. 494; Seton v. Slade, 3 Lead. Cases in Equity 377.
There is a very good reason why it should be incumbent upon the vendor to remove doubts, and furnish the evidence of his title. He must be supposed to have the means for so doing; at least much more so than the vendee, He must be supposed to know his own title, and the sources of it, while a vendee could not be supposed to know anything of it. This must have been peculiarly so in England, when they had no registry acts, and the muniments of title were to be found only *in the possession of the vendor. Nor do I see why in this State, where we have these registry acts, the rule should be changed. It is true the records facilitate the enquiry very much, but they are not absolute evidence of title. A conveyance may be perfectly good, though not recorded, except as to creditors and bona fide purchasers. Besides, the title often rests upon matters in pais, which the records do not disclose. But as to these matters, the vendor must be presumed to be better informed than the vendee; and therefore I see no sufficient reason for adopting a different rule in this country from that which appears in the English reports. I will not say’ that it was the duty of the vendor in this case to furnish the evidence of his title, but that it was his misfortune that he could not do so. See, also, 4 Graft. 253. This course of reasoning leads us to hold, that at the time of the first decree in this case, and with the facts then appearing, the vendee ought not to have been required to take the title as it then appeared; and the decree dismissing the bill was proper, and there were no circumstances changing this state of things until the filing of the bill of review in November 1868.
Then it appeared that a conveyance had actually been made by Martha E. Shore of her interest to the testator in May 1850, and then such deed was found to be upon the record though it had not been indexed. Then for the .first time the doubt upon that subject is fully removed.
But in the meantime, as I have already said, the weight of evidence shows there was a material depreciation in the value of the property.
The decree shows also that his own circumstances had in the meantime changed so as to render it impossible for him to perform the contract; though _ as his own testimony upon this last point is quite contradictory, I do not give it much weight.
*215 It is true that time is not, as a general rule, regarded *as of the essence of a contract in equity unless it is so made. But if by the lapse of time during the default of either party, circumstances have happened which materially change the value of the contract as to the other party not in default, then time is of the essence of the contract. Garnett v. Macon; Floyd v. Collett; and Seton v. Slade; above cited; Story’s Eq. Jur., sec. 776, and cases there cited.
Suppose that in the meantime the property had greatly risen in value. Is it to be supposed that the vendor would have filed this bill of review? Or if the vendee had in such case then asked for specific performance on his part would not the vendor have resisted it?
I do not give anjr weight to the fact that the vendee at the time of making his bid was excited by stimulants. This is no excuse for refusing to comply with the terms of sale. It is no doubt true also that he was eager and anxious to find excuses for his non-performance. But this would not preclude him from taking advantage of any valid and lawful objection, if such could be found; and it seems to me that they were found in this case.
On the whole, I cannot come to any other conclusion, than that under the circumstances of this case, the decree of the Circuit court was right and should therefore be affirmed.
Decree affirmed.