## WHEELING.

### MIDDLETON *v.* SELBY.

Submitted June 8, 1881, Decided December 17, 1881.

1. An appeal was allowed from two decrees in a suit and from a third decree sustaining a demurrer to a bill of review and dismissing the bill, which bill was brought to review the said two decrees; the appeal was subsequently dismissed, and afterwards another appeal was allowed to the same decrees.  More than five years had elapsed from the time the said two decrees were pronounced, when the second appeal was allowed. HELD :

    The *appeal* as to these two decrees must be dismissed as improvidently awarded and the cause be determined upon the bill of review alone.

2. A bill of review can be filed for only two causes—error in law appearing on the face of the decree—or some new matter, which has arisen in time after the decree, and not upon any new proof, which by the exercise of reasonable diligence might have been used, when the decree was made.

3   In determining, what is error of law apparent on the face of the decree,
the court cannot look into the evidence in order to see if the decree is
erroneous, as that is the proper office of the court upon appeal; but in
determining this question it is necessary to look at the whole record in-
cluding the testimony to ascertain, whether upon the whole case error of
law has been committed.

4. A verbal contract for the sale of land may be enforced in a court of equity,
where there has been a part-performance of the contract. Possession un-
der the contract and a payment of the purchase-money or a part thereof
constitute such part-performance.

5. Where a suit is brought for the specific execution of a verbal contract for
the sale of land against the purchaser, he is entitled upon application to
have the matter of title referred to a commissioner to be reported upon,
or the court may, where the proof raises a doubt as to the title, refer that
matter to a commissioner; but unless such application be made, or such
doubt appear, such reference is not necessary.

6. Generally a court of equity will not decree a specific execution of a con-
tract for the sale of land, unless the vendor can make a good title.

7. A defendant in a chancery-suit may allege any such new matter in his an-
swer, as would entitle him to affirmative relief, if alleged in a cross-bill,
and may obtain such affirmative relief, if properly pleaded, under section
35 of chapter 125 of the Code; but to entitle him to that relief, he must
pray for it in the answer, as he would have had to do, if he filed had a
regular cross-bill.

8. Complainant is not required, and it would be bad pleading, to reply
specially to such new matter, unless there is a prayer for affirmative re-
lief in the answer.

Appeal from and *supersedeas* to three decrees of the circuit
court of the county of Randolph, rendered respectively on
the 25th day of April, 1874, on the 27th day of October,
1874, and on the 29th day of April, 1876, in a cause in said
court then pending, wherein Henry C. Middleton was plain-
tiff, and Thomas Selby was defendant, allowed upon the pe-
tition of the said Selby.

Hon. John Brannon, judge of the sixth judicial circuit,
rendered the decrees appealed from.

PATTON, JUDGE, furnishes the following statement of the
case :

Henry C. Middleton instituted a suit in chancery in the cir-
cuit court of Randolph county against Thomas Selby to en-
force the specific performance of a verbal contract for sale of
land. The bill alleges, that the complainant sold the de-

fendant a tract of two hundred acres of land on the 27th day
of August, 1870, for the sum of $1,000.00; that in pursuance
of the contract of sale the purchaser was put in immediate
possession of the land and continued in possession up to the
institution of the suit on the 28th day of August, 1872;
that $100.00 of the purchase-money had been paid but no
more, and the balance remained due and unpaid; that the
complainant had the full legal and equitable title to the land
and filed with the bill a deed with general warranty to the
purchaser for the land. The prayer of the bill is for the sale
of the land to satisfy the amount due on the contract and for
general relief. The defendant was proceeded against as a
non-resident.

The deposition of the complainant was taken, in which he
testifies to the making of the contract and its terms the pay-
ment of the $100.00 and the delivery of possession of the
property to Selby, who by his tenant had been in the actual,
full and complete possession, ever since the contract was made.
The deposition of the tenant was also taken, in which he
states, that his landlord, Thomas Selby, told him of his pur-
chase of land from Middleton, and that he wanted him to go
on the land as his tenant, until he returned from England in
October following; that Middleton would put him in poses-
sion ; that Middleton did accompany him to the land and he
moved into the house on the property and had continued in
possession of the property ever since.

On the 25th day of April, 1874, the cause was heard, when
a decree was pronounced appointing a commissioner to sell
the lands, unless the purchase-money should be paid in sixty
days. The money not being paid, the commissioner sold the
land on the 10th day of August, 1874; and H. C. Middleton,
the complainant, became the purchaser for $685.00. On the
23d day of October, 1874, Thomas Selby filed his answer, in
which he says, that on the 27th day of August, he and the
complainant had some conversation concerning the purchase
of lands in West Virginia; and the complainant urged him to
purchase the tract mentioned in the bill; and that the price of
$1,000.00 and the terms of payment thereof were the price,
and terms as mentioned in the bill; that those terms were
satisfactory to him; but he denies that there was such a posi-

tive verbal contract between him and the plaintiff concerning
said land, as the plaintiff in his bill alleges there was; and
he further denies, that he did positively agree to purchase
said tract of land at the price and upon the terms as alleged
in plaintiff's said bill"; and that shortly after the alleged
contract he learned, that the complainant did not have a per-
fect title to the land; that he furnished him no abstract of title
to the land, nor furnished him any means of determining,
whether the title was good; that he was not at that time or
at any time since able to furnish him with an abstract of per-
fect title, but on the contrary his title is defective in this, that
the land was formerly part of a large survey of land owned
by Henry C. Middleton, and that complainant holds the land
under a conveyance from John B. Hillesay or William B.
Storms; and that there is no deed on record in Randolph
county to show, that the land was ever conveyed to said John
B. Hillesay or William B. Storms by the said Henry C. Mid-
dleton or by any one else; also that a part of the land is
claimed by Henry I. Westfalls, who has instituted suit in the
circuit court of Upshur county against the administrator and
heirs of Henry C. Middleton, to recover that part of the land;
that he is an alien and the subject of a foreign country and
not a citizen of the United States or of the State of West
Virginia, and being an alien he was advised, that by reason
of the laws of the State of West Virginia, it was not safe for
him to purchase and hold lands in the State; that he denies,
that the complainant put him in possession of the land; that the
plaintiff put a tenant on the land, after he had left the State
of West Virginia, and that he was ignorant, that a tenant had
been so placed upon the land, until his return from England in
September, 1870; that the alleged payment of $100.00 was
never made; that the complainant borrowed that sum from
his son, Thomas J. Selby, and he requested and urged his son
to let that money go as a payment on the land, and his son
believing the complainant's representations, that the defend-
ant had purchased the land, agreed to let the money go as a
payment upon the land; that the complainant has conveyed
the land to Steele & Rowan residing at or near the town of
Clarksburg, West Virginia, and thus had put it out of his
power to convey to him; that the alleged verbal contract is

not such a contract as can be specifically enforced in a court of equity, and he relies upon the statute made for the prevention of frauds and perjuries.

On the 27th day of October, 1874, and at the same term of the court, when the answer was filed, the court pronounced its decree confirming the sale of the land to Middleton, and after applying the amount of the sale to the payment of the sum due by Selby decided against him the difference, to wit: $437.50 with interest from the date of the decree. On the 30th of April, 1875, Selby filed a bill of review in the circuit court of Randolph county praying, that the decrees of the 25th of April, 1874, and of the 27th day of October, 1874, might be reviewed and reversed, and the cause be reheard. The defendant in the bill demurred generally to the bill; and the demurrer was sustained, and the bill dismissed.

On the 21st day of October, 1876, Selby obtained an appeal to this Court from the said decrees of April 25, 1874, and October 27, 1874, and from the decree of the 29th day of April, 1876, sustaining the demurrer to the bill of review and dismissing the bill. On the 25th day of June, 1880, this appeal was dismissed for failure to print the record. On July 8th, 1880, another appeal was allowed from the same decree.

*Henry Brannon* for appellant cited the following authorities: 10 Gratt. 571; 25 Gratt. 146; 3 Minn. 317; Code, ch. 125, § 36; 7 Leigh 128.

*Ewing & Riley* for appellee cited the following authorities: 12 W. Va. 371; 3 W. Va. 659; 2 Dan. Chy. Pr. 1632; 2 Clark (Ia.) 514; 8 Ohio St. 384; 13 Pet. 6; 5 Mason 303; Story Eq. Pl. § 407; 3 Call 183; 12 Ohio 63; 3 Paine 368; Hayw. 189; 6 Mon. 153; 1 Dev. & Bat. Eq. 108, 110; 3 Sneed 397; 18 Ill. 511; 6 W. Va. 249; 10 W. Va. 12; 9 Gratt. 1; 1 Rand. 165; 1 H. & M. 99; 3 Rand. 238; 6 Rand. 607; 4 W. Va. 352; *Id.* 620; 3 Rand. 44.

PATTON, JUDGE, announced the opinion of the Court:

The appeal in this cause not having been allowed until the 8th day of July, 1880, no notice can be taken of any error, if any existed, in the decrees of the 25th day of April, 1874 and the 27th day of October, 1874, as more than five years had

elapsed from the time those decrees were pronounced, when the appeal was allowed, except so far as such error may be considered upon the bill of review filed in the cause. (Acts of 1872–3, ch. 17, § 3). A bill of review can be filed for only two reasons, error in law appearing on the face of the decree or some new matter, which has arisen in time after the decree, and not any new proof, which by the exercise of reasonable diligence might have been used when the decree was made. (*Amiss et al.* v. *McGinnis,* 12 W. Va. 371). In determining what is error of law apparent on the face of the decree the court cannot look into the evidence in order to see, if the decree sought to be reviewed is erroneous, as that is the proper office of the court upon appeal. (*Thompson* v. *Edwards,* 3 W. Va. 659.

The bill in this case does not aver any new matter arising, since the decrees were pronounced; and the only question is: Does it show any error in law upon the face of the decrees, for which they should be reviewed and reversed? In determining this question it is necessary to look at the whole record including the testimony to ascertain, whether upon the whole case error of law has been committed in pronouncing the decrees. The bill clearly shows a case for the specific execution of a verbal contract for the sale of land notwithstanding the statute of frauds. The part-performance of a verbal contract entitles either party to a specific execution of the contract. Payment of the purchase-money or a part of it and possession of the property constitute such part-performance, as takes a case out of the statute. (*Lowry* v. *Buffington,* 6 W. Va. 249; *Vickers* v. *Sisson's adm'r,* 10 W. Va. 12; *Butcher* v. *Stapely,* 1 Vern. 363; *Pike* v. *Williams,* 2 Vern. 455; *Earl of Aylesford's Case,* 2 Stra. 783; *Stewart* v. *Denton,* 1 Fonbl. Eq. 187; *Savage* v. *Carroll,* 1 Ball & B. 265; *Kine* v. *Balf,* 2 Ball & B. 343; *Gregory* v. *Mighell,* 18 Ves. 328; *Pain* v. *Coombs,* 1 De. G. & Y. 34, 46; *Pugh* v. *Goods,* 3 Watts. & Ls. 56.)

The answer denies the sale, denies the possession, denies the payment of part of the purchase-money and sets up as defence to the complainant's right to a specific execution of the alleged contract, that the title to the property is defective, and that the defendant is an alien and was not entitled to purchase and hold real estate. The complainant, who was a competent

witness, gave his own deposition, in which he clearly proves the contract and its terms, the payment of part of the purchase-money and the possession of the defendant. The tenant's deposition also shows the possession and the statement of the defendant, that he had purchased the land and wanted him to occupy it. Although the defendant appeared and moved for a continuance of the cause, which motion was granted on the 26th day of April, 1873, and although these depositions were not taken until the 23d day of December, 1873, the defendant did not testify himself or offer any testimony whatever in the cause. He filed no answer even until a year after his appearance, and until a year after the decree for sale had been pronounced, and after the commissioner had under that decree sold the land. It is plain under these circumstances, that the allegations in the bill of the sale, payment of part of the purchase-money and possession in the defendant were fully established, and so far as the decree as a matter of law determined those matters, it was not error.

In regard to the defence, that the defendant was an alien and was not therefore entitled to purchase and hold real estate in this State, it is sufficient to say without determining the question, whether that would be a good defence or not, if it had been made out, that there was no proof whatever of that fact in the record. If it could have availed him, he should have proved it, but he did not attempt to do so. It is like any other matter set up in an answer not responsive to the allegations of the bill, the burden of proof was upon the respondent. Had there been evidence upon this subject in the court below, it would have raised the question as a matter of law upon the bill of review, whether being an alien the contract could be specifically executed against him. But in this cause neither upon the bill of review nor upon an appeal upon the record could that question arise.

The only other ground of error assigned is, that as the answer alleged, that the title was defective, the court should have referred the cause to a commissioner to ascertain and report upon the title. The complainant, as before stated, gave his deposition ; and in that deposition he states, that he was the legal and equitable owner of the land. This deposition was taken upon notice served upon defendant's counsel, and

yet there was no cross-examination nor request for the statement of the title, and no exception at any time was taken to the deposition or its sufficiency on that point. The defendant contented himself with denying in his answer filed more than two years after the institution of the suit and more than a year after his appearance, that the title was good. There is no question, that generally and where any defect in the title was not known to the purchaser at the time of the contract of sale, a court of equity will not decree a specific execution of a contract for the sale of land, unless the vendor can make a good title. (*Watts* v. *Kenny*, 3 Leigh 272; *Goddin* v. *Vaughan & Co.*, 14 Gratt. 117; *McCaver* v. *Jones*, 1 Rob. 256; *Clark* v. *Reives*, 12 Gratt. 98). It is also true, that where a doubt arises as to the title, or where the defendant asks for a reference of the question of title to a commissioner to be reported on, it is proper to so refer the cause, and upon such application, should the court refuse to refer the question to a commissioner, it would be error.

Fry on Specific Performance, section 825, says: "Hence it follows, that though the purchaser may admit, that he has only one particular objection or no objection at all to the title, he is equally entitled to a general reference as to it." (*Vide also Griffin, ex'r,* v. *Cunningham,* 19 Gratt. 571; *Beverly* v. *Lawson's heirs,* 3 Munf. 317; *Lesturgeon* v. *Martin,* 3 Myl. & K. 255; *Fleetwood* v. *Green,* 15 Ves. 594.) In 19 Gratt. 589 the court say: "There is very good reason, why it should be incumbent upon the vendor to remove doubts and furnish the evidence of his title. He must be supposed to know his own title and the sources of it, while a vendee could not be supposed to know anything of it. This must have been peculiarly so in England, when they had no registry acts, and the true muniments of title were to be found only in the possession of the vendor. Nor do I see, why in this State, where we have these registry acts, the rule should be changed. It is true, the records facilitate the enquiry very much, but they are not absolute evidence of title. A conveyance may be perfectly good though not recorded, except as to creditors and *bona fide* purchasers. Besides the title often rests upon matters *in pais*, which the records do not disclose. But as to these matters the vendor must be presumed to be better informed than

the vendee, and therefore I see no sufficient reason for adopting a different rule in this country from that which appears in the English reports."

The enquiry as to title may be directed by the court (1) at the hearing or (2) on motion before the hearing but after answer or (3) before the answer.   The practice of allowing this enquiry on motion was introduced by Lord Thurlow.   (Fry on Spe. Perfm. § 860).   From the authorities it is clear, that this enquiry will be directed upon the application of the vendee, or where the proof in the cause raises a doubt as to the title; but it does not appear from the authorities, where no application is made by the purchaser, nor doubt raised by the proof, that the court will in all cases direct an enquiry as to the title.

In this case I see no ground whatever for directing the enquiry.   No application was made to the court for a reference to a commissioner; and no proof whatever was taken to cast a doubt upon the evidence of the complainant, that he had both the legal and equitable title to the property.   The case of *Griffen* v. *Cunningham, supra,* is not a case in point in this regard, because in Virginia the answer of the complainant is to be taken as true unless overcome bv two witnesses or one witness with strong corroborating circumstances; and in that case the defendant answered and showed in his answer, that he had had counsel to examine the title, and the counsel had reported it was bad, which report was filed as a part of the answer.   The court thereupon directed a reference.   It does not appear distinctly, whether the reference was made upon the application of the purchaser or by the court *ex mero motu.* But in our State, when the answer denies any material allegation of the bill, the effect of such denial is only to put the plaintiff on satisfactory proof of the truth of such allegation, and any evidence, which satisfies the court or jury of the truth thereof, shall be sufficient to establish the same.   (Code of W. Va. ch. 125, § 59; *Lowry* v. *Buffington,* 6 W. Va. 249.)

But it is claimed by counsel for the appellant, that if the allegations of the answer as to defective title are not to be regarded as responsive to the bill, then they are to be regarded as new matter calling for affirmative relief by way of rescission, and in the absence of a special reply should have been

taken as true without proof under section 36 chapter 125 of the Code. The allegations were unquestionably responsive to the bill; but the trouble is, that there was evidence sufficient to satisfy the court, that the title was not defective. Whether that proof would have been held sufficient in the Appellate Court to sustain the decree, had there been an appeal to this Court, it is not necessary to enquire, as upon this bill of review no question of fact passed upon by the court below can be enquired into here. The only question here is: Assuming the fact to be true, was there error of law in the decree based upon the conclusion of fact? But assuming that these allegations, if properly pleaded in the answer, would have entitled the appellant to affirmative relief and under section 36 of chapter 125 of the Code would have been taken as true, in the absence of a special replication was the matter of defective title properly pleaded? Section 35 of said chapter provides:

" The defendant in a suit in equity may in his answer allege any new matter constituting a claim for affirmative relief in such suit in the same manner and with like effect, as if the same had been alleged in a cross-bill filed by him therein, and in such case, if the plaintiff desire to controvert the relief prayed for in the answer, he shall file a reply in writing denying such allegations of the said answer, as he does not admit to be true, and stating any facts constituting a defence thereto."

Section 36 provides: "Any material allegation of the bill not controverted by an answer and every material allegation of new matter in the answer constituting a claim for affirmative relief not controverted by a reply, shall for the purposes of the suit be taken as true, and no proof thereof shall be required."

I understand these two sections of the Code taken together to mean, that where a defendant in a chancery suit is entitled to affirmative relief, instead of filing an answer denying the relief prayed for in the bill, which was the only office or effect of an answer at common law, and proceeding by regular formal cross-bill separate and distinct from the answer, which at common law was the only mode of obtaining affirmative relief unless by original bill, he may now in addition to the denial of the relief prayed for in the bill allege in his answer such new matter, as would, if set up in a formal cross-

bill or orginal bill, entitle him to affirmative relief, or in the language of the statute, "the defendant in a suit in equity may in his answer allege any new matter constituting a claim for affirmative relief in such suit *in the same manner and with like effect*, as if the same had been alleged in a cross-bill filed by him therein" without the formal cross-bill or original bill, as was formerly necessary.    In other words the provisions of the statute only authorize the defendant to combine the cross-bill and the answer together.    But in doing so it was evidently not the purpose of the statute to dispense with the prayer for the affirmative relief, which by the allegations of the answer it appeared he was entitled to, if it had been prayed for in a cross-bill or original bill.    The language of the statute is :  "And in such case, if the plaintiff desire to controvert *the relief prayed for in the answer*, he shall file a reply in writing," &c.    The mere averment of new matter constituting a claim for affirmative relief is not sufficient.    It must not only be such matter but it must be alleged in the same manner and with like effect, as if the same had been alleged in a cross-bill filed by him therein.    There must be a prayer for the relief appropriate to the character of the new matter.

Having then answered the claim of relief asserted by the complainant and proceeding in the same answer to set up the substantial allegations of a cross-bill with the prayer for relief, the complainant is put in the position of answering—or as the statute says, replying to this new matter and prayer for affirmative relief in the same manner and with like effect, as if it was in a cross-bill or original bill under the same penalty of its allegations being taken as true without proof, as if they had been made in a formal bill.    The 36th section I understand to mean, that the material allegations of any bill not controverted by an answer are to be taken as true, and no proof thereof shall be required, and for the same reason that the material allegations of a bill shall be taken *pro confesso*, the allegation of new matter in the answer constituting a claim for affirmative relief, if pleaded in the same manner and with like effect, as if set up in a cross-bill, shall likewise be taken as true, and no proof thereof shall be required.    But simply to aver new matter in an answer without a prayer for affirmative relief should be treated as mere surplusage.    It

gives to the complainant no notice of a wish for affirmative relief nor the character of the relief desired, and leaves him without guide in replying to some uncertain and unknown relief, that on the hearing may be asserted.

Whether process must issue in such case, as it would do upon a regular formal cross-bill, I do not think it necessary now to determine, as that question in my view of it does not arise in this case.

The answer in this case does not pray for any affirmative relief, and does not indicate in any way the relief, that the respondent considers himself entitled to from the new matter averred. He does not in the answer seek affirmative relief; and it would be a strange anomaly in pleading, if the court should decree to him that, which neither under a special or general prayer he has sought at its hands. If the defendant had been entitled to a rescission of the contract of sale, if the grounds, upon which he was entitled to it, had been set up in a cross-bill or in the manner contemplated by the statute, he is certainly not entitled to it upon the allegations of the answer filed ; nor was the complainant in the bill required to do more than file a general replication, which he did. A special replication would have been bad pleading and would properly have been rejected by the court.

The final decree in the cause recites the filing of the answer with general replication and proceeds : " And the plaintiff now moving for a final decree herein and the defendant not moving for a continuance of this cause and not showing any grounds for continuance, as required by section 52 of chapter 125 of the Code of West Virginia, and the court seeing no good cause to order a continuance, and this cause coming on now to be finally heard, &c." It will be seen therefore, that no application was made for a reference to a commissioner as to title ; no claim was asserted or pretended for affirmative relief; no time was asked to take proof; nothing on the record raised a doubt as to the title ; abundant opportunity had been afforded him to show that no such contract had been made, or that, if made, it should not be enforced ; and under all these circumstances he chose to rely on the unsupported averments of his answer.

The court did not err in sustaining the demurrer to the bill

of review ; and I am of opinion to affirm the decree of the circuit court sustaining that demurrer and dismissing the bill with costs to the appellee, and to dismiss the appeal allowed to the decrees of the 25th day of April, 1874, and the 27th day of October, 1874, as improvidently awarded.

THE OTHER JUDGES CONCURRED.

DECREE OF APRIL 29TH, 1876, AFFIRMED. APPEAL AS TO OTHER DECREES DISMISSED.

# WHEELING.

