# CHARLESTON.

## MARSHALL *v.* STALNAKER *et als.*

Submitted March 7, 1911. Decided February 20, 1912.

1. APPEAL AND ERROR—*Record—Scope and Contents—Bill of Exceptions.*

No particular form of identification of a bill of exceptions in an order, designed to make it a part of the record, nor, in the bill, of a paper intended to be made a part of it, is necessary. Any terms of description indicating, with reasonable certainty, intention to make a paper part of a judicial record is sufficient. (p. 396).

2.  EXCEPTIONS, BILL OF—*Scope and Contents—Incorporation by Reference.*

    A reference in a bill of exceptions to a paper, as containing the evidence adduced on the trial, suffices to incorporate in it two batches of transcribed evidence, bearing the same marks of identification and obviously heard in the same trial.  (p. 396).

3.  EJECTMENT—*Right of Action—Title of Plaintiff—Prior Possession.*

    Recovery in ejectment on the strength of prior possession without more is allowable only against mere trespassers or intruders without *bona fide* claims of title, and forcible entrants. The doctrine has no application in cases in which the defendant has acquired the possession peaceably and in good faith, under claim of title.  (p. 398).

4.  SAME—*Right of Action—Possession of Defendant.*

    In the case of a dispute between adjacent owners as to the location of a boundary line, left in a state of uncertainty by the evidence, the defendant may have a *bona fide* claim of title to the extent of the location he contends for, sustaining his possession during the pendency of the litigation to determine the controversy.  (p. 399).

5.  ADVERSE POSSESSION—*Operation and Effect—Extent of Rights Acquired.*

    Title by adverse possession under color of title is limited to the boundaries as finally fixed and determined. Outside thereof, adverse possession may be established by enclosure and occupancy, but not otherwise.  (p. 398).

Error to Circuit Court, Braxton County.

Action by T. Marcellus Marshall against Ahab Stalnaker and others.  Judgment for defendants, and plaintiff brings error.

*Affirmed.*

*Linn, Byrne & Hines* and *Alex Dulin,* for plaintiff in error.

*Hall Bros.* and *C. F. Greene,* for defendants in error.

POFFENBARGER, JUDGE:

The sufficiency of the record on which this writ of error was allowed has been challenged on grounds, pertaining to the bill of exceptions.  The order intended to make it part of the record is skeleton in form, saying the plaintiff tendered "his bill of ex-

ceptions in the words and figures following, towit: (Here copy
the same), which is signed, sealed and ordered to be made a part
of the record." The bill itself is likewise in skeleton form, certi-
fying, among other things, "that upon the said trial evidence was
given as shown in the paper marked 'Evidence' and having the
name of the presiding Judge thereon including the deposition
of Peter Bosley, except certain questions and answers marked
'Objection sustained'." As we find a paper, designated "Bill of
Exceptions" and bearing the style of the case, and another paper
purporting to be evidence and so marked, also bearing the style
of the case and the name of the presiding judge, we may reason-
ably say these papers are those referred to in the order and bill.
Nothing more than reasonable certainty is required, as we have
often held. *Jackson* v. *Railroad Co.,* 65 W. Va. 415; *DeBoard*
v. *Camden &c. Co.,* 62· W. Va. 41; *McKendree* v. *Shelton,* 51 W.
Va. 516.

The evidence, so marked, is in two batches, each marked the
same way and apparently containing a portion of the evidence
in the same case. Although the bill speaks of only one paper,
marked "Evidence," this misdescription is obviously a trifling
inaccuracy, and cannot reasonably be regarded as introducing an
element of uncertainty. If we could say there are two such
papers in substance and effect, as well as in mere form, the bill
would be fatally defective, of course, but we are unable to do so.
The recital in the bill of the omission of parts of the deposition
of Bosley is the basis of a charge of incompleteness of the evi-
dence; but, as the omitted portions were offered by the plaintiff
and excluded at the instance of the defendant, they constitute
no part of the evidence introduced and the latter is not affected
by its omission. An order entered in the case shows the regular
stenographer of the court was excused on account of sickness
before the evidence was all in and another substituted. The lat-
ter certifies a lot of evidence taken by her which is not included
in the paper signed by the judge as evidence nor in the bill of
exceptions. Hence, in point of fact, the bill does not contain all
the evidence, but the certificate of the judge, saying it does, is
conclusive and unimpeachable, and the omitted evidence can
neither be added nor used to condemn the bill of exceptions.

Being part of the record, the bill is a verity, unalterable and un-impeachable.  *Tracy* v. *Carver Coal Co.*, 57 W. Va. 587.

Practically all of the rulings of the court to which exceptions were taken involve principles governing the disposition of the case on its merits.  Though most of them are founded upon the action of the court in overruling objections to instructions requested by the defendant, their correctness depends rather upon the character of the evidence as a whole than upon portions thereof or conflicting theories arising out of it.  The basis of the objections to them is alleged lack of evidence to justify the court in giving them or to sustain the verdict rendered in accordance with the law they apply.  Hence, the entire case here practically turns upon the sufficiency of the evidence to sustain the verdict.

The titles of the parties do not emanate from a common source nor is either of them traced to the Commonwealth of Virginia or the state.  The land in controversy is a narrow strip and the right to it depends upon the location of the broken or angular boundary line between the plaintiff's tract of 128 acres and that of defendants containing 37 acres.  Both are irregular in form, and that of the defendants adjoins the plaintiff's on the west.  On the western side of the plaintiff's tract, there is a corner at the apex of an obtuse angle from which the lines run northeast and southeast.  The land in controversy lies along these two lines, being a narrow strip something over one hundred poles long.  Some years before the institution of this action, the defendants cleared some of the land within the controverted territory, but, upon remonstrance from the plaintiff and his insistence upon the location of the boundary in accordance with his present claim, the defendants abandoned the strip, or permitted plaintiff to take possession of it, or so far relaxed their efforts to hold it as to enable him to obtain possession thereof.  He had a tenant on it for one year.  After that, his adversaries again peaceably entered upon it and have ever since been in possession.  This subsequent action of theirs seems to have been taken after thorough investigation as to their rights and under a sincere conviction of the correctness of their theory as to the line and validity of their claim to the land.  As to the true location of the line, the evidence is highly contradictory, uncertain and

inconclusive in character. The corners and lines directly in question are not conclusively identified or fixed as located by either of the parties. The monuments called for in the deeds at these points have been destroyed and the evidence as to the true location consists, for the most part, of surveys starting from other points and governed by the calls for courses and distances. These surveys are conflicting and inconclusive also. Surveyors say it is necessary to vary from the courses and distances called for in the title papers in order to make them accord with the claims of either of the parties. There is some testimony tending to establish certain objects as monuments on each of the contested lines, but not at all conclusive. The location of the line was, therefore, clearly a jury question.

Though the plaintiff does not trace title to the commonwealth or the state, ten years of open, notorious, exclusive and hostile possession would give title to the land in controversy, provided it is within the boundaries of his deeds; but, as the boundary line is the very matter in controversy, his possession of other portions of his land for that period would not conclusively establish his title to the portion dependent, as to the title, upon the location thereof. Assuming therefore, the sufficiency of the evidence to prove title by adverse possession, the burden is nevertheless upon him to establish the boundary line so as to include the land in controversy, and since the evidence relating to the boundary line in controversy is inconclusive, so as to raise a question for the jury and not for the court, such possession does not incontestably prove title to the strip in controversy. "Adverse possession under and by virtue of a deed is limited to the premises actually covered thereby." 1 Cyc. 1134, sustained by numerous authorities.

But, invoking the rule enunciated in *Tapscott* v. *Cobbs,* 11 Grat. 172, and adverted to in *McDermitt* v. *Forbes,* 71 S. E. 193, *Taylor* v. *Russell,* 65 W. Va. 632, and *Witten* v. *St. Clair,* 27 W. Va. 762, the plaintiff insists upon his right to recover in this action without proof of title of the kind we have been discussing, perfect paper title or title by adverse possession, on the ground that the defendants are mere intruders or trespassers upon land of which he had had possession at the time of their entry. This principle, however, does not sustain his posi-

tion, since the defendants entered peaceably and under a *bona fide* claim of title, believing the land in controversy to be within the boundaries prescribed by their deed. Of this doctrine, Judge BRANNON said, in *Taylor* v. *Russell*: "The principle just stated applies only where there is one in actual possession intruded upon wrongfully by one having no shadow of title. It does not apply to parties having competitive rights or title, where the question is which is the better title." Such is the view expressed by Judge SNYDER in *Wilten* v. *St. Clair* and the doctrine is so stated in *McDermitt* v. *Forbes*. "This rule is founded upon the presumption that every possession peaceably acquired is lawful, and is sustained by the policy of protecting the public peace against violence and disorder. But, as it is intended to prevent and redress trespasses and wrongs, it is limited to cases where the defendants are trespassers and wrongdoers. It is, therefore, qualified in its application by the circumstances which constitute the origin of the adverse possession, and the character of the claim on which it is defended. It does not extend to cases where the defendant has acquired the possession peaceably and in good faith, under color of title." *Sabariego* v. *Maverick,* 124 U. S. 261-97. See also *Haws* v. *Victoria Copper Mining Co.,* 160 U. S. 303; *Christy* v. *Scott,* 14 How. 282; *Fowke* v. *Darnell,* 5 Litt. (Ky.) 317; 15 Cyc. 30. Here the possession of the defendant was taken peaceably and under the *bona fide* belief that the lands lie within their boundaries and so the case does not fall within the rule. Had the entry been forcible, the plaintiff could recover without regard to title or prior possession, but it was not. Moreover, in point of fact, the defendants themselves had had prior possession, for they had entered upon and improved the land before the plaintiff took possession of it at all. The plaintiff's entry was a mere interruption of their prior possession and, when they re-entered, the possession vested in them as it had previously been. By re-entry, they regained all of their prior right. *Bacon* v. *Sheppard,* 11 N. J. L. 232. "If a disseisee re-enters, he shall have trespass against a stranger for a trespass done during the disseissin; for by re-entry he vests the possession in himself *ab initio.* So against a lessee, donee or feoffee of the disseissor. 2 Rolle Abr. 554." *Id.* "If one disseisses me, after my regress, the law, as

to the disseissor and his servants, supposes the freehold always continued in me." Chief Justice in *Liford's Case,* 12 Jac. 1. The evidence tending to show abandonment of their prior possession by the defendants, or withdrawal from the premises and acquiescence in the claim of the plaintiff, does not preclude the application of this principle. An error on their part as to the location of the boundary line, superinduced by the representations and claims of the plaintiff, wholly destroys the effect of such withdrawal or acquiescence. An informal agreement upon the location of a boundary line, made under mistake is not binding, in the absence of long acquiescence or circumstances constituting an estoppel. 4 A. & E. Enc. L. 862. However, we need not invoke this doctrine, since there is no evidence of any express agreement. No line was marked or agreed to nor possession taken in such manner as to carry an agreement into execution. The elements requisite to bring this phase of the case within the principles declared in *Schwarlz* v. *Gwinn,* 32 W. Va. 487, our leading case on the subject of agreed boundary lines, are not found in the evidence.

Failure of this alleged right of recovery on the ground of mere prior possession, under the application of the principles just stated, disposes of the exceptions to the action of the court in giving the instructions requested by the defendants, all of which were intended to do no more than cast upon the plaintiff the burden of proving title to the land in controversy, agreeably to the general rule that a plaintiff in ejectment must recover upon the strength of his own title. These instructions properly ignored the numerous exceptions to that rule, since there is no evidence tending to bring the plaintiff's case within any of them. They are unsupported by argument and nothing in the petition suggests any ground of exception other than that here indicated.

Seeing no error in the judgment, we affirm it.

*Affirmed.*

Note by BRANNON, JUDGE:

Is the broad statement in point 3 clearly sound? Is it true that one in actual possession, ousted by one who has color, but not legal or good title, cannot sustain ejectment to recover his possession? It is admitted that he can against a trespasser or

intruder.  Is not any one, though he has color of title and *bona fide* claim, but not good title, a trespasser or intruder in law?  Since I wrote the case of *Taylor* v. *Russell,* 65 W. Va. 632, I have been led to question its soundness, not in decision, but in the statement that one having merely possession cannot recover except against a trespasser or intruder, and that the principle that one may recover on mere possession does not apply where there are competitive titles.  My doubt is expressed in the later case of *Riffle* v. *Skinner,* 67 W. Va., at close of page 87. See law there cited.  As stated there possession is *prima facie* evidence of title, good until the true title comes.. Newell on Ejectment, page 434, ch. 13, sec. 14, says: "It is well settled, upon common law authority and by the decisions of American courts, that in an action of ejectment, proof of prior possession by the plaintiff, claiming to be the owner in fee, is *prima facie* evidence of ownership and seizin, and although the lowest kind of evidence it is sufficient to authorize a recovery, unless the defendant shows a better title."  I find in 15 Cyc. 30: "Ejectment may be maintained upon the prior possession of plaintiff, or of parties through whom he claims, such possession being a sufficient *prima facie* title.  Accordingly where no legal title is shown in either party, the party showing prior possession in himself or those through whom he claims will be held to have a better right.  Thus it has been held that the plaintiff upon such a showing may recover in ejectment against a defendant who shows no better right or title."  *Mitchell* v. *Carder,* 21 W. Va. 277, holds that, "a party, who is in possession of lands under claim of title, makes it his against the world, except as to the true owner, and it remains his as against all persons entering without his consent."  See *Suttle* v. *Richmond,* 76 Va. 289, citing *Lee* v. *Tabscott,* 2 Wash. 276.

I note specially *Bass* v. *Ramos,* 138 Am. St. R. 105.

Why should not one in possession, deprived of it by one who has not good title, be restored to it?  *McMurry* v. *Dixon,* 105 Va. 605, is decided authority on the point.