# CHARLESTON

### GARTEN v. LAYTON *et als.*

Submitted March 2, 1915.     Decided March 23, 1915.

1. EQUITY—*Bill of Review—Evidence Reviewable—Depositions.*

On a bill of review for error of law, the court cannot consider the evidence by way of review of its former findings as to issues of fact, but it may examine the depositions to ascertain whether there is any evidence therein, tending to establish facts put in issue by the pleadings, and essential to the relief granted, or whether evidence sufficient, if uncontradicted, to warrant relief, is opposed by contradictory evidence so as to create an issue respecting the right to relief.   (p. 66).

2. EVIDENCE—*Admissions—Probative Effect.*

Facts admitted in pleadings and evidence must be considered in connection with all the other facts set up in the pleadings in which they are found and the testimony disclosing them, upon the inquiry as to their legal effect.   (p. 67).

3. DEEDS—*Defective Execution—Contract of Sale.*

A paper having all the requisites of a deed, except the seal, may operate as a contract of sale, passing the equitable title to the land (p. 68).

4. SAME—*Contract of Sale—Defective Deed—Acceptance of Grantee.*

Though not executed in pursuance of an oral contract of sale, such a paper becomes a contract by acceptance thereof on the part of the intended grantee.   (p. 68).

5. VENDOR AND PURCHASER—*Contract of Sale—Consideration—Gifts.*

That the consideration for such contract is made payable to strangers thereto by way of gift does not preclude its validity as a contract.   (p. 68).

6. DEEDS—*Contract of Sale—Defective Deed—Effect of Acceptance.*

Acceptance thereof by the intended grantee, binds him to payment of the money as directed by the instrument.   (p. 68).

7. TRUSTS—*Contract of Sale—Payment of Consideration to Third Person.*

Such a contract impresses the land it embraces with a trust in favor of the persons to whom it directs payment of the purchase money by the vendee. (p. 68).

8. SPECIFIC PERFORMANCE—*Vendor and Purchaser—Contract of Sale—Inadequacy of Price.*

Mere inadequacy of the price in a contract of sale of land does not alone warrant rescission or cancellation, nor preclude specific performance, thereof. (p. 68).

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Kanawha County.

Suit by Jane Garten against J. W. Layton and others. From a decree on a bill of review, reversing decree and granting the relief sought by the original bill, the defendant named appeals.

*Reversed.*

*A. M. Belcher,* for appellant.

*J. W. Kennedy* and *U. S. Albertson,* for appellee.

POFFENBARGER, JUDGE:

This appeal is from a decree on a bill of review for error of law, reversing a former decree in the cause, and granting the relief sought by the original bill.

George Belcher an aged man owning a tract of land containing 444 acres, more or less, executed a paper which, but for the lack of a seal, would have been a deed conveying the land to J. W. Layton, a son-in-law, for and in consideration of the sum of $4010.00 which, by a provision of said instrument. was to be paid to the following persons, described as heirs, in the following amounts: Margaret Layton, daughter, $500.00; Sarah Pinson, daughter, $500.00; the heirs of a deceased son, Samuel Belcher, $500.00, to be equally divided among them; the heirs of Polly Crowder, a deceased daughter, $500.00, to be equally divided among them; Mack Belcher, son $500.00; Jane Garten, daughter, $200; Thomas and William Garten, grandsons, $150.00 each; James Garten, grandson, $100.00; Bettie Belcher, widow of a deceased brother, $100.00; Albert

and Lewis Belcher, nephews, $100.00 and $50.00, respectively; Bartley Belcher, brother, $100.00; John and Henry Layton, grandsons and sons of grantee, $100.00 each; Emma Patterson, $100.00; Mary Hudnall, niece, $50.00; and Robert Dunlap, $100.00.

This paper as well as the certificate of acknowledgment thereof is dated, Sept. 23, 1907, and was admitted to record, Feby. 8, 1909. George Belcher died about two years later, Febry. 18, 1911. Just one month after his death, this suit was instituted by his heirs to annull said instrument and set it aside on the ground of alleged mental incompetency on the part of Belcher, and undue influence exerted over him in the execution thereof and lack of a seal. By way of preventive relief, an injunction restraining the cutting of timber on the land, by J. O. McDermitt and Mason Long, to whom Layton had sold it, was sought. Several of the other heirs of Belcher filed answers by which they admitted the allegations of the bill and joined in the prayer thereof. Layton's answer put in issue all the material allegations thereof, except that of the lack of the seal, averred title in himself, legal as well as equitable, notwithstanding the omission of the seal, and prayed an adjudication of the validity of the paper and perfect title in himself.

The large amount of testimony taken on the issues raised pertained, for the most part, to the mental condition of George Belcher and was conflicting. Deeming the evidence adduced in support of the bill insufficient, the court, on Nov. 18, 1912, denied the relief therein prayed for, dismissed it, and, on Layton's answer and cross-bill, adjudged the instrument in question to be valid and the title to the land to be in Layton, subject to the vendors lien reserved by the paper. By leave of the court, the bill of review for error of law was filled, March 28, 1913, and, upon it, a decree was entered, Oct. 24, 1913, declaring the instrument in question is invalid to convey or pass title to the land and is not the deed of George Belcher and that, upon his death, the land descended to his heirs and vested in them, and accordingly vacating, setting aside and annulling the decree of Nov. 18, 1912. Thereupon Layton excepted and asked the court to

modify its decree so as to leave in him the equitable title and declare the heirs seized of the legal title only.

Though the bill of review offered no new evidence and complains of matter of law only, resort is had to the evidence as the basis of the argument to sustain the decree. At the same time, the narrowness of the scope of judicial action on a bill of this class is admitted. The errors correctible on a bill of review for error of law must appear on the face of the decrees, orders and proceedings in the cause, arising on the facts admitted by the pleadings or stated as facts in the decrees. Being parts of the pleadings, exhibits may be considered. So may a report of a judicial sale, because made a part of the court's proceedings. *Dunn's Exrs.* v. *Renick,* 40 W. Va. 349, 363; *Core* v. *Strickler,* 24 W. Va. 689; *Lorentz* v. *Lorentz,* 32 W. Va. 556; *Middleton* v. *Selby,* 19 W. Va. 167; *Thompson* v. *Edwards,* 3 W. Va. 659. The rule observed in *Middleton* v. *Selby,* cited, seems to authorize the court to examine the record far enough to see whether there is any evidence tending to sustain an allegation of fact as to which an issue has been made, but not to weigh such evidence, if found, by way of review of the former action thereon. In the syllabus of that case, the general rule inhibiting resort to the evidence seems to be qualified to that extent. It says: "But in determining this question, (what is error of law apparent on the face of the decree), it is necessary to look at the whole record including the testimony to ascertain, whether upon the whole case error of law has been committed." No express interpretation of this limitation is found in the opinion filed in that case, but, by its inquiry as to the existence of evidence to sustain issues raised by the pleadings, the court applied it without an express or formal interpretation and so revealed its meaning. It is clearly susceptible of such use without violation of the spirit or principle of the general rule. If we assume the filing of a mass of depositions in support of an issue, containing not a word of testimony tending to sustain it, or establish an indispensable element thereof, a good illustration of its office will be disclosed. No decree on an allegation properly denied and not in any sense proved has a foundation or basis in law, and an inquiry as to whether there is any evidence at all does not involve the function of

weighing what admittedly is evidence nor determination of its probative value. It is not a review of a finding as to matter of fact for, in case of a total absence of evidence, there is no issue of fact to try or that could have been determined by the entry of the decree. Such an inquiry is a purely legal one. The allegation falls for want of proof.

Notwithstanding the answer specifically denies the allegations of mental incompetency and undue influence, it is claimed the truth of both arises by necessary inference from facts averred by it. Substantially these are that the defendant, for twenty years, maintained and clothed Belcher and provided for him the necessaries of life, furnished him such money as he required, and expended for him money in payment of his taxes and so prevented loss of his real estate; that Belcher had no other means of support and, by reason of his advanced age, required almost constant attention from respondent and his family for about two and one half years before his death; that the services thus rendered constituted the sole inducement to the execution of the paper; and that it was not solicited or sought in any way. An inference from these facts of the existence of a state of mental incompetency in contradiction of positive averments of the existence of an unusually clear and strong mind for a man of Belcher's age, full possession of his mental faculties at the date of the execution of the paper and knowledge and understanding of his action in so doing would not be warranted by any rule of interpretation revealed in the argument. Positive and direct statements are not overthrown by mere inferences. Nor are these facts inconsistent with a state of competency. There may have been mental competency attended by physical incapacity for business. Mental competency to execute a deed or make a will is not inconsistent with bad management or lack of capacity for successful prosecution of business enterprises. For all that appears in the pleadings, Belcher may have been "land poor" and, in his need of money and averseness to disposition of his lands, he may have availed himself of the generosity of his daughter and son-in-law, as a matter of preference. Nor is it possible, consistenly with the rules of interpretation, to treat these facts as constituting an admission of undue influence. They are given in the answer

as constituting the basis of Belcher's motive for the provision made for his son-in-law and the imposition upon him of the trust created in favor of other relatives. They are expressly put into the answer for this purpose and no other, and it would be a flagrant perversion of the purpose of the pleader to turn them to an entirely different one. Besides, all fraud and undue influence are expressly and emphatically denied.

Like argument is based upon facts admitted in the testimony of Layton and A. M. Belcher, the latter having prepared the instrument. Layton and his sons acted as messengers of George Belcher in some of his communications with A. M. Belcher, pertaining to its preparation. By them he sent for A. M. Belcher. The scrivener says he prepared two papers, one a deed of trust securing payment of the contemplated bounties, which Belcher refused to execute. These facts are not inconsistent with voluntary and intelligent action on the part of the donor. Assuming him to have been in full possession of his mental faculties, as these and other witnesses say he was, he could consistently make such use of his son-in-law and grandsons as is disclosed by their testimony, and there is nothing conclusive in the fact that he chose to sign one paper and not the other. This fact is favorable rather than unfavorable to the defendant. Under no principle of law can the unfavorable part of the testimony of witnesses be taken to the exclusion of the favorable portion thereof. It must be considered in its entirety. Wigmore Ev. Sec. 2099.

Assuming the execution of the paper to have been the voluntary and intelligent act of Belcher, it is necessary to say what its effect was. There was no consideration except future compliance with conditions annexed. Nevertheless, it may well be considered as an offer in writing, acceptance of which would convert it into a contract, provided payment of the stipulated sums of money, to third persons, would suffice as matter of consideration. Assuming this to be true, the paper, after acceptance, contained all the essential elements of a contract. It was accepted while George Belcher was yet alive. Layton caused the paper to be recorded and asserted his claim of title to the land. The bill admits he had sold the timber on it and that his vendees thereof had been cutting it

for some time before the institution of the suit, and, also, that he had executed an oil and gas lease of the land. Under principles declared in *Capehart* v. *Hale,* 6 W. Va. 547, these acts were sufficient to bind Layton to the terms of the offer. As to him, his verbal acceptance bound him by an oral contract. His subsequent acts were the equivalent of his signature to the paper.

That payment of the money stipulated as the consideration was to be made to third persons does not invalidate the contract. The land was not a gift to Layton. He was required to pay $4010.00 for it. The price may have been inadequate and there may have been a partial gift to him, but that is not a matter of which the heirs can complain. It belonged to George Belcher and he could make such disposition of it as he saw fit. The provisions made for them are likewise gifts. Inadequacy of price alone is not generally regarded as suffient ground for refusal of specifice performance of a contract of sale. Waterman Sp. Perf. Sec. 179; Story's Eq. Jur. Sec. 244; *Hale* v. *Wilkinson,* 21 Gratt. 75; *Talley* v. *Robinson's Assignee,* 22 Gratt. 888; *Ambrouse's Heirs* v. *Keller,* 22 Gratt. 769; *White* v. *McGannon,* 29 Gratt. 511; *Stearns* v. *Beckham,* 31 Gratt. 379. The charges of incompetence and fraud having failed, inadequacy of price is the only remaining ground of impeachment and that is not enough. Whether right of action at law on the contract would be in the persons to whom the consideration was directed to be paid or the personal representative of the vendor, it is not necessary to decide. The latter clearly have a remedy in equity, since the contract impresses upon the land a trust in their favor. *Matheny* v. *Furguson,* 55 W. Va. 656; *Roberts* v. *Coleman,* 37 W. Va. 143; *Hooper* v. *Hooper,* 32 W. Va. 526; *Hogg* v. *Browning,* 47 W. Va. 22; *Pondexter* v. *Green,* 6 Leigh 504.

Lack of a seal prevented the legal title from passing to Layton, but he obtained the equitable title, and could have required the heirs to convey the legal title, if he had sought such relief by his answer and cross-bill. *Boggess* v. *Scott,* 49 W. Va. 316; *Watson* v. *Wells,* 5 Conn. 468.

Error in the decree complained of is rendered apparent by the principles and conclusions here stated. Accordingly it

must be reversed and annulled; but, proceeding to grant such relief on the bill of review as the circuit court should have granted, this court will modify and correct the decree of Nov. 18, 1912, by insertion therein of the word, "contract," in lieu of the word, "deed," after the word, "subsisting," and insertion of the words, "equitable title," in lieu of the word, "titles," in the last sentence thereof, but without prejudice to the rights of the beneficiaries of said trust to enforcement of the same by any proper proceeding and of the vendee of the land to enforcement of conveyance of the legal title on payment of the amounts charged on the land; all of which will be certified to the circuit court of Kanawha County.

*Reversed.*