## CHARLESTON.

WALDRON v. W. M. RITTER LUMBER COMPANY.

Submitted September 26, 1917.   Decided October 2, 1917.

1. ADVERSE POSSESSION—*Deed or Other Title—Extent.*

   Adverse possession under a deed or other title paper is limited to the premises actually covered thereby.   (p. 795).

2. SAME—*Title or Deed—Extent.*

   A deed or other title paper to which one is not a party, and under which he does not claim, but who claims adversely to it, though made by a tenant occupying some portion of the land under a lease from him, will not as against third persons claiming adversely operate to enlarge the boundaries covered by his title papers, or to give him title by adverse possession to land not covered by his title papers or actually occupied.   (p. 795).

3. EVIDENCE—*Pleading—Effect.*

   When facts admitted in pleading or evidence are pleaded in estoppel in another suit they must be considered in connection with all the other pleadings and facts appearing in the record; and if when thus considered the admissions should not be given the legal effect claimed they will not be so construed.   (p. 797).

   (RITZ, JUDGE, dissenting).

Error to Circuit Court, McDowell County.

Action of trespass by John W. Waldron against W. M. Ritter Lumber Company.   Verdict for plaintiff, and from a judgment setting aside the verdict and awarding a new trial, plaintiff brings error.

*Affirmed.*

*Alfred G. Fox, Sanders & Crockett* and *Russell S. Ritz,* for plaintiff in error.

*Greever, Gillespie & Divine,* for defendant in error.

MILLER, JUDGE:

Upon writ of error thereto we are asked to reverse the judgment below, in an action of trespass for cutting timber, setting aside the verdict of the jury in favor of the plaintiff, and awarding the defendant a new trial.

Our decisions say that a stronger case must be presented to justify reversal of a judgment awarding than one denying a new trial and pronouncing final judgment on the verdict.

The land claimed in the declaration is a tract of one hundred acres, more or less, and is described therein as being a portion of the land conveyed to plaintiff by W. L. Taylor, trustee, by deed dated February 25, 1908.

It is proven, if not conceded, that the land on which the timber was cut is within the boundary of a larger tract of fifty thousand acres, known as the Lansburg title, and shown to have been owned and possessed by defendant.

At the trial plaintiff for title and color of title and possession thereunder adverse to that of defendant to give him good title, relied upon, first, the immediate deed to him from W. L. Taylor, trustee, dated February 25, 1908; second, a deed of trust from A. S. Waldron and wife to said Taylor, trustee, dated March 27, 1893, and under which the land conveyed thereby was, on the 27th day of April, 1896, sold by said trustee, for the debt secured thereby, and was purchased by plaintiff; third, two deeds, one dated June 4, 1886, from William Hagerman to A. S. Waldron, calling by metes and bounds for sixty three acres, the south east end of a one hundred and twenty five acre tract, the other dated October 28, 1886, from Malkiah Puckett and wife to said A. S. Waldron, calling for sixty two acres, the balance of said one hundred and twenty five acres; third, certain intermediate deeds not necessary to particularly describe, all going back by a successive chain to a patent issued to Hezekiah A. Harman for a tract of one hundred and twenty five acres described therein by metes and bounds, dated April 2, 1855.

This is the only source of title relied on by plaintiff, except, first, a deed dated the 9th day of May, 1896, from A. C. Waldron to Belle Waldron, describing the land on which the timber was cut, and the judgment for plaintiff against them, affirmed by this court, 73 W. Va. 312, holding defendants therein tenants of plaintiff, and adverse possession by them for more than ten years; second, the record of the chancery cause of John W. Waldron versus W. M. Ritter Lumber

Company, and particularly the orders therein enjoining the defendant, pending said suit in ejectment, from cutting said timber, suspended by order of this court on appeal, but subsequently affirmed on final hearing, 70 W. Va. 470, and also the answer of the W. M. Ritter Lumber Company, pleaded as an estoppel, and in which in addition to its other title it was alleged:

"Respondent further says that it has title to the timber on said 100 acre tract of land by virtue of deeds and conveyances to it under what is locally known as the Lansburg 50,000 acres title, emanating from the Commonwealth of Virginia in a grant issued by said Commonwealth to Robert Morris, March 4, 1795, for 320,000 acres of land, as will appear from certified copies of said grant, deeds and other title papers connecting respondent with said grant, which will be hereafter filed herewith as 'Exhibit Lansburg, 50,000 Title', if so required by the Court. Respondent also holds said timber as fee simple owner thereof and by virtue of a claim of title originating in the said conveyance from A. C. Waldron to Belle Waldron, dated May 9th, 1896, hereinbefore referred to as Exhibit 'B', which said timber was conveyed to respondent by said Belle Waldron and A. C. Waldron, her husband, by deed dated April 29th, 1910, and of record in said McDowell County Court Clerk's Office a certified copy of which is filed herewith as part hereof.

"Respondent denies that plaintiff has or ever at any time had any possession whatsoever of the said 100 acres tract but on the contrary avers that the said Belle Waldron has had and held the adverse, hostile, visible, notorious, exclusive, continuous, and unbroken possession of said lands ever since the date of said deed from A. C. Waldron to her of May 9, 1896, by residing thereon, and by clearing, fencing, cultivating and otherwise improving the same." Some other documentary evidence was also introduced and relied on by plaintiff, which as we view the case it is unnecessary to more specifically refer to.

We think it clearly appears from the evidence that neither the original patent nor any subsequent deed under which plaintiff can claim title, except the immediate deed to him

from Taylor, trustee, covers the one hundred acre tract involved and upon which the timber was cut; indeed we do not understand that this fact is seriously controverted. The surveyors and all other witnesses examined on the subject seem to agree that if the boundary of the one hundred and twenty five acres be limited and laid down on the ground as called. for by these title papers the one hundred acre tract will not be included.

Such being the evidence, but two principal questions remain: First, did plaintiff as against the older title of defendant company acquire title to the land by color or claim of title and possession thereunder for the requisite period to hold the same as against the defendant company; second, whether or not the defendant by the judgment in ejectment against A. C. Waldron and Belle Waldron, to which it was not a party, or by the allegation in its answer in the injunction suit referred to, is estopped in this suit to deny the right and title of the plaintiff to the land or the timber sued for.

On the first question, as already indicated, the only title paper of plaintiff covering the one hundred acre tract is the immediate deed to him from Taylor, trustee, of February 25, 1908. Neither the deed of trust under which Taylor sold the one hundred and twenty five acre tract to Waldron, nor any prior deed back to the patent to Harman covers the one hundred acre tract; and the evidence is conclusive that the trustee in executing the deed to Waldron more than ten years after the date of the sale by him was induced to follow a description furnished him by Waldron, according to a survey made for Waldron, run not according to Waldron's title papers, but so as to take in and cover the one hundred acre tract. It is conceded, however, that this deed by Taylor, trustee, to Waldron, made in 1908, was not old enough nor was possession under it long enough to ripen into good title as against the defendant company. But it is argued that because a house was built some years ago by mistake on the one hundred acre tract, outside the boundary of the one hundred and twenty five acres covered by plaintiff's title papers, and referred to in the record as the Malakiah Puckett house, and was occupied for many years by plaintiff, his

80 W. Va.

tenants, or some one under whom he claims and particularly by A. C. Waldron and Belle Waldron against whom he obtained his judgment in ejectment, and who, by the deed from A. C. Waldron to Belle Waldron, made during their occupancy of the land, and which describes the one hundred acres and defined the boundary of their claim, constituted sufficient color or claim of title to ripen into good title as against the older title of the defendant company.

It is settled law, however, that adverse possession under and by virtue of a deed or other title paper, is limited to the premises actually covered thereby. *Marshall* v. *Stalnaker,* 70 W. Va. 394, 398, point 5 of the syllabus. Wherefore, possession of the Puckett house outside the limits of plaintiff's deeds or title papers by himself or his tenants, however long continued, could not ripen into good title to any land, except that actually occupied or enclosed so as to define the boundary, and payment of taxes thereon for the requisite period. It is conceded that the one hundred acres was not enclosed, although the evidence tends to show that some small patches cultivated by Waldron or his tenants may have been enclosed by fences, but no timber was cut from such portion of the land for which defendant was responsible or could be rendered liable to the plaintiff.

But can plaintiff rely for color of title on the deed from A. C. Waldron to Belle Waldron, his alleged tenants, and his judgment in ejectment against them? As we have said the defendant company was not a party to that suit, and of course can not be precluded or estopped thereby. Moreover, plaintiff never claimed and could not claim title to the land under that deed. He claimed adversely thereto. That was a hostile deed to him made for the purpose of acquiring title by possession as against him and all the world. That deed did not define his boundaries nor was it intended to operate nor could it operate as a claim on his behalf or to define his boundaries. And say their possession under him gave him title to the land actually occupied by the house or any enclosed fields, this is not an ejectment suit, but an action for timber taken, and as no timber was taken from such occupied or enclosed portions of the tract, recovery could not be

based on title acquired by such possession to such portion or portions of the tract, and if any timber had been taken from them, as in ejectment, it would necessarily be limited to the part or parts to which good title might have been acquired. *Clark* v. *Beard,* 59 W. Va. 669, 676.

Finally is defendant estopped to deny plaintiff's title by any averment or admission in its answer to the plaintiff's bill in the injunction suit? We think not. We said in *Garten* v. *Layton,* 76 W. Va. 63: ''Facts admitted in pleadings and evidence must be considered in connection with all the other facts set up in the pleadings in which they are found and the testimony disclosing them, upon the inquiry as to their legal effect.'' See, also, *Nadenbousch* v. *Sharer,* 2 W. Va. 285. In his bill plaintiff pleaded and relied only on his title papers covering the one hundred and twenty five acre tract. The defendant company did not plead and rely alone on its purchase from A. C. and Belle Waldron of the timber then being cut. It set up and relied also upon its rights as owner of the Lansburg title. It can not be reasonably said that by pleading its rights as purchaser of the Belle Waldron claim, which was adverse to plaintiff, that defendant meant to admit title to the land in plaintiff, and thereby be estopped from continuing to assert its title to the land under the Lansburg title. As held in the case cited the whole record must be looked to for the legal effect of the admission relied on. As plaintiff only asserted title to the land under his deeds and title papers, should he now be heard in the inconsistent position that he also had or acquired title under the hostile deed from A. C. Waldron to Belle Waldron? Do not the principles announced in *Chesapeake & O. Ry. Co.* v. *Rison,* 99 Va. 18, and *Hast* v. *Railroad Co.,* 52 W. Va. 396, and *Town of Weston* v. *Ralston,* 48 W. Va. 170, apply? We are inclined to think so. However, this is not a question necessarily involved and need not be decided.

Another matter we should not overlook in view of the new trial awarded. The conclusion we have reached to affirm the judgment and the grounds of our decision we think render plaintiff's instruction number two bad and should

not be given.  It assumes contrary to our view of the law that the adverse deed from A. C. Waldron to Belle Waldron could serve as color of title in plaintiff and operate to define the limits of his claim or boundary and ripen into good title by the adverse possession.  To serve as color of title we think the deed or paper should be one purporting to give right or title to the claimant or some one under whom he claims. *Swann* v. *Thayer,* 36 W. Va. 46; *Swann* v. *Young, Id.* 57.

Finding no reversible error in the judgment it will be affirmed.

*Affirmed.*

RITZ, JUDGE, *(dissenting):*

After a careful consideration of the record in this case I am unable to concur in the conclusion reached by the majority of the Court.  With the legal principles announced by my brethren I can agree, but when I make application of these principles to the facts as they present themselves to me, I am forced to conclude that the judgment below should be reversed.  It is not likely that an extended review of the evidence and the conclusions that I draw therefrom would serve any purpose but my own gratification.  For that reason I content myself with the general statement of the grounds of my dissent.