# CHARLESTON.

## WILLIAM H. AHNER et als. v. J. M. YOUNG et als.

Submitted May 13, 1919.　Decided May 27, 1919.

1. DEEDS—Construction—Intent of Parties.

In the construction of deeds the purpose is to ascertain the intention of the parties, and when so ascertained to give effect to such intention, unless to do so violates some principle of law inconsistent therewith. (p. 343).

2. SAME—Retention of Land by Grantor—Presumption.

The grantor in a deed, apparently intended for a conveyance of all of a tract of land owned by him, is presumed not to have intended to retain a narrow strip thereof, and upon this presumption calls in such a deed may be disregarded as erroneous, if the deed, viewed in the light of extraneous evidence, is ambiguous in its terms. (p. 343).

3. PUBLIC LANDS—School Lands—Forfeiture—Redemption—Proof.

One seeking redemption of forfeited land under section 17, ch. 105, Code, must prove that at the time when his land became vested in the state he held a good and valid title, legal or equitable, superior to that of any other claimant, whether that claimant be the state or an individual. (p. 344).

4. ADVERSE POSSESSION—Entry by Color of Title—Extension of Possession—Presumption.

One who enters upon land under color of title is presumed to have entered in accordance therewith, wherefore his actual possession of a portion of the property will by presumption of law be constructively extended to the boundaries defined by his color of title, except so far as the land so included is in the adverse possession of another. (p. 344).

5. SAME—Continuous and Uninterrupted Possession—Knowledge—Effect.

Where a junior patentee and his successors in title hold during many years continuous and uninterrupted possession of the land granted by the patent, with the knowledge and acquiescence of the owner and the successive grantees of a senior patent of a larger acreage, including the land of the junior patent, the owners of the junior patent thereby acquire proprietary rights superior to those of the owners of the senior patent. (p. 344).

Appeal from Circuit Court, Kanawha County.

Suit for injunction by W. H. Ahner against J. M. Young and others, and J. E. Kendall and C. W. Fisher, at first defendants but afterwards coplaintiffs, with answers in nature of cross-bills by defendants J. M. Young and others. From a decree dissolving an injunction awarded to Ahner, canceling a deed to Kendall and Fisher and their lease to Ahner as clouds upon the title of defendants, and directing an accounting and referring cause to a commissioner, Kendall and Fisher appeal.                    *Affirmed and remanded.*

*F. C. Pifer* and *B .H. Blagg,* and *Somerville & Somerville,* for appellants.

*L. E. McWhorter,* for appellee J. M. Young.

LYNCH JUDGE:

The decree brought here for review upon appeal by J. E. Kendall and C. W. Fisher, at first named defendants, but who later became coplaintiffs with W. H. Ahner, their lessee, dissolved the injunction theretofore awarded to Ahner, he then being sole plaintiff, but who has not appealed, canceled the deed to appellants and the lease by them to Ahner as clouds upon the title of the appellees, Young and Ohio Fuel Oil Company, as prayed in their answers in the nature of cross-bills seeking such relief, directed an accounting for the oils produced from the land in question, and for this purpose referred the cause to a commissioner. The lease for oil and gas purposes executed by Kendall and Fisher to Ahner covers a tract of 33 acres of land. To prevent interference by John M. Young and Ohio Fuel Oil Company, his lessee, with operations thereon for the production of oil and gas, Ahner obtained the injunction dissolved by the decree. This controversy concerns the title to that tract as between Kendall and Fisher on the one hand and J. M. Young on the other, and the right to produce oil and gas therefrom as between Ahner of the one part and the Ohio Fuel Oil Company of the other part.

Kendall and Fisher rely for title to the disputed area upon two deeds executed to them by Andrew J. Jones, one

dated April 3, 1912, the other August 24, 1912, each of the two deeds covering the same land, the second purporting to give a more definite description of the land conveyed by the first. The deed of April 3 purports to vest in the grantees in fee only ''the right, title and interest'' of the grantor in the tract, and to define it by geometrical courses and measurements, while the deed of August 24 defines it by adjoiners.

To reach a correct solution of the issue respecting title it is necessary to determine whether, as appellants claim, the 33-acre tract is within the boundary of the 63,500-acre tract granted to John Steele by the Commonwealth of Virginia by a patent dated November 12, 1796, or whether, as appellees claim, it is within the tract of 180 acres granted to John Young, Sr., by the same authority by a patent dated February ——, 1825. For the purpose of this discussion it is for the present necessary only to concede the fact to be as claimed by the appellants. Indeed that concession may, and as we shall see does, apply for all purposes, because that tract, if not within the Steele survey exclusive of the 180-acre survey, is within the latter survey patented to John Young in 1825 and later referred to in tracing the title of John M. Young to the 33 acres. The latter area is, nevertheless, within the Steele survey, because it included within its boundaries the 92-, 100- and 180-acre tracts hereinafter referred to, but expressly excluded from its operation the 92- and 100-acre tracts.

Jones, the grantor of Kendall and Fisher, acquired the land to which he had any record title from Elisha M. Givens by deed dated December, 1902, for 50¼ acres, all of which Jones says lies west and none of it east of Young's Branch, a stream whose waters flow through the 180 acres, 92 acres and 100 acres and then into Elk River of which it is a tributary. Young's Branch, therefore, separates each of the three tracts mentioned into two parcels, and the land of James M. Young on which the Ohio Fuel Oil Company has a lease lies east of that stream. The tract of 50¼ acres conveyed by Givens to Jones the latter conveyed to W. H. Ewing October 31, 1904, by the same calls and description mentioned in the Givens deed to

him.  Ewing still owns that tract.  The identity of the sub-
ject matter of the two deeds, the deed from Givens to Jones
and the deed of Jones to Ewing, is unquestioned, and indeed
it may be said to be unquestionable.  Jones had no other land
or interest in any other outside of the boundary contained in
these two deeds, judged by what appears in the record be-
fore us.  That land in its entirety is west and not east of
Young's Branch, and probably it is a part of the Steele sur-
vey and outside of the 180-acre tract.  However that may be,
it is not land the title to which is in controversy in this suit.
If it is in controversy, Ewing and not Kendall and Fisher is
the true owner of the fee, and Ewing is not a party to the
suit.

The land within which the 33 acres lie, if J. M. or Mark
Young, as he is commonly called, owns it, is a part of the
180-acre survey which the Commonwealth of Virginia granted
to John Young, Mark Young's grandfather, February ——,
1825.  John Young had theretofore acquired title to and
then owned the tract of 92 acres likewise granted by patent
to John Osborn, Jr., April 3, 1788, and the tract of 100 acres
likewise granted by patent to John Young March 11, 1800.
Each of these three tracts adjoined each other thereby form-
ing one compact boundary under a single ownership, and so
it remained until December 25, 1832, when John Young
adopted Young's Branch as the natural divisional line sep-
arating each of the three tracts into two parcels, and con-
veyed the three parcels west of Young's Branch to his son
Charles Young, and each of the three parcels east of the
branch to his son John D. Young, the father of Mark.
Charles Young seems to have conveyed to J. D. Lewis and
Matthew Geary the parcels so conveyed to him by his father.
These parcels Lewis and Geary reconveyed to John D. Young
May 23, 1857, thereby again reuniting into one boundary
and one ownership the three tracts so granted to Osborn and
John Young, the elder, and as so consolidated John D. Young
conveyed them to his sons Mark Young and L. N. Young
September 20, 1867, describing the quantity as being 375
acres, only two acres more than the patents purport to grant.

Of this quantity so specified L. N. and Mark Young conveyed 222 acres to Milton Young April 6, 1891, this being the tract conveyed by John Young, the first of that name, to his son Charles who conveyed it to Lewis and Geary, and they to J. D. Young. With this 222-acre tract we have no further concern as this controversy involves only the residue of these three patents, that is, the area lying east of Young's Branch. To no part of this area has Mark Young since parted with the title except temporarily, and then only as the result of a sheriff's sale for delinquency in the payment of tax assessments thereon, and which title he reacquired from the purchaser December 2, 1899.

Appellants advance and lay most stress upon the argument that as the deeds or some of them in the chain of the Young title call for a line from B to E, as these letters appear on the official map filed in the cause, coupled with the fact, admitted to be true, that the corners so marked and designated are identified and recognized as true corners of other surveys and called for in the 100- and 180-acre surveys and patents, the defendants are concluded thereby and cannot set up or maintain any claim of title to that part of the 180-acre tract beyond or northeast of that line. The 180-acre tract lies north of the 100-acre tract and between it and the Lewis and Donnally line. The deed by John D. Young to Mark Young and his brother Lewis contains this description of the land conveyed: "Commencing on a beach tree near the corner of survey of land formerly owned by Benjamin Slack, Sr., thence with said line back of the land owned by John D. Lewis and the heirs of Andrew Donnally up the river a straight line to land owned by William Cobb, thence with Cobb's line to the river, being the same land conveyed to me by Matthew Geary and John D. Lewis and John Young, my father, supposed to contain three hundred and seventy-five acres." The corner at each end of this line is well established, but to adopt the line between them, as appellants insist should be done, would deprive Mark Young of land he and his predecessors in title have used, occupied and enjoyed without controversy or interruption for nearly a century and

a quarter as to some of it, and for nearly a century as to the residue. Not only would he thereby be deprived of a sub-stantial part of the 100-acre survey, but of all that part of the 180-acre tract lying between the northern boundary of the 100 acres and the southern boundary of the Lewis and Don-nally land the line of which is called for in John D. Young's deed to his sons dated September 20, 1867, a result evidently not contemplated by the parties to that deed. For if the line from B to E is to be adopted as appellants contend, the effect would be to cut off a substantial part of the 100-acre tract, the part north of that line, and also all of the 180-acre tract adjoining it on the north and between it and the south-ern line of the Lewis and Donnally land, the line so called for. Besides, the line for which appellants contend touches the line called for in that deed only at the point B, and as it proceeds towards the point E continues to depart from the Lewis and Donnally line, the distance between the two at that point northward being approximately 82 poles or 1353 feet.

For the proposition relied on by appellants they cite sec-tion 1043, 2 Devlin, Deeds (3rd Ed.) ; *Hunter* v. *Hume,* 88 Va. 24. This is the language of that section : ''Where a deed contains a specific description of the property conveyed and states that it is the same land conveyed to the grantor which covered a tract of a larger size, and recites the con-veyance to the grantee of 'all the land conveyed to me by the deeds aforesaid except such portions thereof as I have heretofore sold,' these words are to be construed as not alter-ing the description or limiting the effect of the prior grant-ing clause of the deed, but as being a reference merely to the claim of title under which the grantor holds.'' For that proposition one case only is cited, *Dow* v. *Whitney,* 147 Mass. 1, 16 N. E. 722. An examination of that case discloses a definite intent to circumscribe with precision the land con-veyed. The deed construed evinced a purpose to limit the subject matter of the conveyance by prescribing the enclos-ures with particularity, giving each and every boundary line, and in specific terms excludes from its operation parcels

84 W. Va.

of the lot or tract theretofore sold. by the grantor. The contest seems to have arisen between the grantee therein and the vendees of parcels reserved or excepted, for which deeds had not theretofore been executed. The same conditions were dealt with by this court in *Curtis* v. *Meadows,* recently de-- cided, and the same rule was applied. Though Meadows had the acreage conveyed to him by fixed boundaries well-marked and designated, he claimed an additional large area, the basis of the claim therefor being the line called for in an old patent 800 feet beyond the designated and marked corners and lines described in his deed, an additional acreage to which we held he was not entitled because the deed obviously did not convey it to him. And there was therein no such general de- scription as that contained in the John D. Young deed to his sons; nothing in fact to disclose an intention to include land beyond the definitely circumscribed boundaries except the mere call for the line of such patent.

The Virginia case cited uses this language: "Particular boundaries govern general description of land; and a false description is rejected and the instrument takes effect if a sufficient description remains to ascertain its application." That statement of the principle as contained in the first point of the syllabus is to be read and considered in the light of the facts of the case, and when so read it is apparently inapplica- ble here. However that may be, one of the authorities cited to support the proposition, and the others are perhaps like it, is 1 Greenleaf on Evidence, § 301. Where, the author says, "upon applying the instrument to its subject matter * * the description in it is true in part but not true in every par- ticular, * * so much of the description as is false is re- jected, and the instrument will take effect if a sufficient de- scription remains to ascertain its application." He illu- strates his meaning by a quotation from Mr. Justice Parke in *Doe d. Smith* v. *Galloway,* 5 B. & Ad. 43, 51, saying: "Therefore under a lease of 'all that part of Blenheim Park situated in the county of Oxford, now in the occupation of one S, lying' within certain specified abuttals, 'with all the houses thereto belonging which are in the occupation of said

S,' it was held that a house lying within the abuttals, though not within the occupation of S, would pass. So by a devise of 'the farm called Trogue's Farm, now in the occupancy of C' it was held that the whole farm passed, though it was not all in C's occupation.''

In other words, the intent of the grantor is to prevail according to the well established canon of construction of instruments of every character. For in construing deeds as well as wills the purpose is to ascertain the intention of the parties, and when that intention is ascertained it will be effectuated unless it violates some other legal principle. *Irvin v. Stover,* 67 W. Va. 356. A more recent declaration of the same rule is found in *Winding Gulf Colliery Co.* v. *Campbell,* 72 W. Va. 449, wherein it is said: ''If a deed contains a general description of property conforming to the manifest intention of the parties as shown by the situation and circumstances surrounding them, and the purpose they had in view, and also another description clearly inconsistent with such circumstances and purpose, such later description must be rejected as false and as having been inserted in the deed by accident or mistake.'' Besides, there is the general presumption that a grantor does not intend to retain the title to a long narrow strip next to one of his lines when to do so is clearly inconsistent with the manifest purpose of the conveyance. *Western M. & M. Co.* v *Peytona etc. Coal Co.,* 8 W. Va. 406. Or as said in *Winding Gulf Colliery Co.* v. *Campbell, supra:* ''The grantor in a deed, apparently intended for conveyance of all his land or all of a tract, is presumed not to have intended to retain a narrow strip thereof, and upon this presumption calls in a deed may be disregarded as being erroneous, if the deed, viewed in the light of extraneous evidence, is ambiguous in its terms.'' This presumption we think is peculiarly appropriate to the facts and circumstances of this case. For we repeat that if the line from B to E is to limit the extent of Mark Young's title northward, the effect will be to deprive him of a portion of the land to which we think in right and justice he is entitled, even as far north of that line as the 180-acre tract ex-

tends to the Lewis and Donnally land agreeably with the call in the deed of September 20, 1867.

This conclusion is reinforced by the fact of possession by Mark Young and his predecessors in title to which we have already alluded, as well as the uninterrupted continuity of such possession in the same family for an unusual length of time, especially when their possession is compared with that claimed by appellants, a comparison which we shall now proceed to make. First of the latter. This possession Jones, the grantor in the deed to Kendall and Fisher, claims to have had from the date of the conveyance to him by Givens in 1902, and to have retained it until he conveyed the land to Ewing in 1904. But the land conveyed by these deeds clearly is not the land in controversy, because the latter is the land embraced in the calls of the deed by Jones to Kendall and Fisher April 3, 1912, one of which is for the Lewis line. Besides, to the land conveyed to Kendall and Fisher Jones appears to have had no title whatever, and his possession, therefore, had no effect by way of strengthening his title or the title of his grantees prior to 1912. This suit was instituted September 14, 1912. Moreover the possession of Ahner under the deed last mentioned and his lease by the grantees therein was not upon the land in controversy but outside of its boundaries and on land to which neither Jones nor Kendall and Fisher, his grantees, had the least semblance of title. Title to it was in J. M. Young as a part of the 180-acre survey and patent to which his title has been traced. And Ohio Fuel Oil Company, Young's lessee, had entered on the land, made a location for a well to be drilled thereon, and was in the act of assembling the material for the purpose of erecting a derrick preparatory to the drilling of a well thereon under the authority of such lease, when the preparation was interrupted by Ahner, and warrants for his arrest were executed upon him. Such possession as he claims to have had readily falls within the definition found in *Dyer* v. *Reitz*, 14 Mo. App. 45, 46: " 'Scrambling possession' is one without any savor of the legitimate enjoyment of property rights, and neither sought nor secured on any such account; but which

is only scrambled for, by one party or both, because of some supposed advantage it may command in a pending struggle.'' See, also, 31 Cyc. 928, note 38. The lack of good faith on his part is evidenced clearly by his conduct in obtaining the injunction. Because while he gave notice of a motion to be made therefor before a judge of one court, he appeared before the judge of a circuit court of another county who without knowledge of such notice awarded the writ. And it was under its protection that he entered upon the 33-acre tract. According to 32 Cyc. 1342, not 44, ''equity will not lend its aid to protect a possession wrested by the complainant from another by fraud or violence, his wrongful act affording no foundation for equitable jurisdiction or relief.'' ''Possession fraudulently obtained will not suffice to give equity jurisdiction to remove cloud from title to real estate.'' *Harman* v. *Lambert*, 76 W. Va. 370.

The attempt recently made by appellants to strengthen their title and right of possession through the instrumentality of a proceeding to sell the land in controversy as forfeited and redemption by them could not and did not accomplish that result. For to effect that result Kendall and Fisher must theretofore have had a valid title, legal or equitable, superior to that of any other claimant, whether such claimant be the state, holding a superior title by forfeiture or otherwise, or an individual. *Yokum* v. *Fickey*, 37 W. Va. 762; *State* v. *Jackson*, 56 W. Va. 558. And such indeed is the requirement of section 17, ch. 105, Code. Without such title permission to redeem and redemption avail nothing as against the true owner not a party thereto, Mark Young not being named as a party to that proceeding.

Then what of Young's possession? To what has already been said upon this phase of the case it is only necessary to make a few observations. If the owner of the land has possession of any part of it under a claim of title, such possession constructively extends to all parts of it even to the exterior boundary of his title papers. This is true whether the land in controversy is embraced by one or several tracts, because actual possession within one of two or more adjoining

tracts of land of the same owner is possession of all of them. *Overton* v. *Davidson*, 1 Gratt. 212; *State* v. *Harman*, 57 W. Va. 446. Besides, it is clear that the successive owners of the 180 acre survey and patent exercised from time to time ostensible and visible control and dominion over it even to the Lewis and Donnally line, and the right to do so was recognized by the owners of the land north of that line, including C. A. Ray, the present owner of a part of such land. And according to the map the tract in controversy extends northward beyond Ray's south line thereby causing an interlock with his land on which the Ohio Fuel Oil Company, also Ray's lessee, has drilled at least two wells producing oil in large quantities. Besides, timber on the 180-acre tract was cut by the authority and permission of Young and those under whom he holds. As a matter of fact at various times the Youngs granted the right to remove, and their vendees acting upon such authority from time to time did remove, the timber thereon.

But appellants further contend that the possession of Mark Young combined with the possession of those under whom he claims did not extend to the 33-acre tract, the argument to support the contention being that as the land was in its primitive condition and uninclosed, there was and could be no such possession. This conclusion is without warrant of law or fact. "The true or apparent owner dwelling upon his farm by himself or his tenant is as truly in the actual possession of his waters and unimproved woodland, however extensive they may be, as he is of his pastures, fields and gardens or that part of the land covered by his residence." *Garrett* v. *Ramsey*, 26 W. Va. 345. Such possession is deemed to be coextensive with and limited only by the title or color of title under which Young claims. "One who enters upon land under color of title is presumed to have entered in accordance therewith, and therefore his actual possession of a portion of the property will by presumption of law be constructively extended to the boundaries defined by his color of title, except so far as the land so included is in the adverse possession of another." *State* v. *Morgan*, 75 W. Va. 92, 96. This doctrine of course applies also to possession under the

senior Steel patent. But no one claiming title thereto, so far as the record informs us, ever contested Young's ownership of the land lying south of the Lewis and Donnally line and their right to the possession of such part within the 180-acre tract until appellants attempted, through Ahner, to enter upon the 33-acres.

Appellants vigorously urge the necessity for trial of the issues on the law side as by ejectment or unlawful detainer because of the uncertainty as to the location of the boundary lines of the 180-acre tract. There is, we think, no such uncertainty that a court of equity in the exercise of its legitimate authority cannot dispose of the merits of their contention. For the court alone and not a jury must decide the purport and intent of a deed or other instrument and what it passes. These are questions of law, not of fact. Besides, a court of equity alone can grant the relief prayed for in the answers of appellees, whereas a court of law does not have that power.

As the statement of facts of the cause and the principles applicable to them fully disclose our views, other assignments become unimportant. Our conclusion therefore is to affirm the decree, and remand the cause.

*Affirmed and remanded.*