# CHARLESTON.

EVERETT GREATHOUSE *v.* F. L. LINGER.

(No. 5229.)

Submitted February 10, 1925.   Decided February 17, 1925.

1.  ADVERSE POSSESSION—*Adverse Possession is Extended to Boundaries Defined by Color of Title Under Which Possessor Entered, Except so far as Land is in Adverse Possession of Another.*

    One who enters upon land under color of title is presumed to have entered in accordance therewith, and his actual possession of a portion of the property will by presumption of law be extended to the boundaries defined by his color of title, except in so far as the land so included is in the adverse possession of another.   (p. 222.)

    (Adverse Possession, 2 C. J. § 507.)

2.  SAME—*Adverse Possession Under Deed or Other Title Paper is Limited to Premises Actually Covered.*

    Adverse possession under a deed or other title paper is limited to the premises actually covered thereby.   (p. 223).

    (Adverse Possession, 2 C. J. § 549.)

3.  SAME—*One Occupying Land Beyond Actual Boundary, But Intending to Claim to True Line Only, Cannot Acquire Title by Adverse Possession to Land Not Covered by Title Papers.*

    Where one by mistake occupies land up to a line beyond his actual boundary, believing it to be the true line, but only intends to claim to the true line, he can not by adverse possession acquire title to the land not actually covered by his title papers.   (p. 223).

    (Adverse Possession, 2 C. J. § 243.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

Error to Circuit Court, Roane County.

Action by Everett Greathouse against F. L. Linger.   From judgment for plaintiff, defendant brings error.

*Reversed; verdict set aside; new trial awarded.*

*Harper & Baker,* for plaintiff in error.
*G. F. Hedges* and *S. P. Bell,* for defendant in error.

MILLER, JUDGE:

By this action in ejectment plaintiff seeks to recover from defendant possession of that part of a small tract of land lying on the southeast side of Tanners Run, in the Town of Spencer. The greater part of plaintiff's lot, the part now in his possession and occupied by him, lies on the northwest side of that stream. The declaration calls for the Bowman line as the southeast boundary of plaintiff's lot. Until located by the jury on this trial, it seems that the true location of this line was not known to the parties. More than ten years before the suit was brought, defendant purchased a number of lots on the southeast side of Tanners Run, and took possession of them under his deed; and he now claims by right of adverse possession all of the land on that side of the stream to within a few feet thereof. The jury located the Bowman line as running through defendant's lot number five, for which he obtained a deed in 1913, and found for the plaintiff on the issue joined, and that he is entitled to recover possession of the land to the Bowman line as located by them. From a judgment on this verdict defendant has prosecuted this writ of error.

It appears that at the time defendant purchased lot number five, it was occupied by an old house, of which he took possession, and which thereafter has been occupied by a number of tenants holding under him, during the ten years before this suit was brought. The testimony of the county surveyor, who was directed by the court to go upon the land and make such survey as might be required by either of the parties to the suit, is that the Bowman line as located by him runs through the house on lot number five; and it was this line as located by the surveyor that the jury found to be the southeastern boundary line of plaintiff's lot, and the line to which they found him to be entitled to possession. If this be true, defendant's possession of lot number five being co-extensive with the boundaries of his deed, plaintiff has lost any right he may have had to maintain an action for any part of that lot. "One who enters land under color of title is presumed to have entered in accordance therewith, wherefore

his actual possession of a portion of the property will by presumption of law be constructively extended to the boundaries defined by his color of title, except so far as the land so included is in the adverse possession of another.'' *Ahner* v. *Young,* 84 W. Va. 336; *Stover* v. *Stover,* 60 W. Va. 285; *State* v. *King,* 77 W. Va. 37; 2 Cyc. 235. Plaintiff's instructions given to the jury, ignored the rule of law laid down in the cases above cited.

On the other hand, adverse possession under a deed or other title paper, is limited to the premises actually covered thereby. *Waldron* v. *Ritter Lumber Company,* 80 W. Va. 792; *Marshall* v. *Stalnaker,* 70 W. Va. 394; *Ahner* v. *Young, supra.* So, unless defendant actually occupied the land outside the lot conveyed to him by deed continuously, by cultivation or some other use, or by enclosure, during the whole of the statutory period, he was not in such possession as will entitle him to hold against the true owner. *Wilson* v. *Braden,* 56 W. Va. 372; *Coal & Lumber Co.* v. *Lumber Co.,* 71 W. Va. 21; *State* v. *Moore,* 71 W. Va. 285.

Defendant, by his testimony, seems to base his claim to the disputed strip of land on the fact that no one else has had actual possession thereof, and that he was led to believe that the Bowman line ran near to Tanners Run; that plaintiff's immediate grantor told him the line ran ''down next to the creek,'' and showed him a mark in a bridge near the creek bank where the line began. But he also testified that he claimed only what was deeded to him. That defendant mistakenly understood the line to be in a particular place, does not amount to a claim of right. ''If one by mistake enters on the lands of another, his title papers not actually covering the land entered, he can not by adverse possession under color of title acquire title to the land not actually covered by his title papers, but will be limited to the land actually enclosed and of which he has the *pedis possessio.*'' *Coal & Lumber Co.* v. *Lumber Co.,* 71 W. Va. 21, 26; *Heavner* v. *Morgan,* 41 W. Va. 428; 2 C. J. 139; 1 R. C. L. 733.

At the instance of the plaintiff, the court gave to the jury four instructions. These instructions are at variance with the law governing the case, in view of the principles above stated

and the evidence adduced on the trial. They fail to take into consideration defendant's posession under his deed; that such possession, if proved, would extend to the lines called for in the deed to him, regardless of the true location of the Bowman line. These instructions are mainly abstract, and make no application of the rules of law stated to the concrete case presented by the evidence. In several instances questions of law are submitted to the jury, along with the questions of fact.

Plaintiff's instruction number one submitted to the jury the question whether plaintiff or defendant had the better "right or claim" to the land in controversy. Instruction number two told the jury that if defendant relied on adverse possession, it was incumbent on him "to show in himself and his predecessors an actual dominion over the land in controversy as against plaintiff and his predecessors in title." Plaintiff's claim was based on his own possession for a period of ten years. Instructions numbers three and four are abstract as well as erroneous, and are misleading because ignoring defendant's rights under his deed to lot number five.

Defendant complains of the form of the verdict. It is said that no disposition was made of the parcel of land disclaimed by defendant. Before issue was joined, defendant disclaimed all the land described in the declaration lying northwest of a line running near Tanners Run. The jury found for plaintiff the strip of land between the Bowman line and the line to which defendant claimed. This was all that was in issue between the parties. The case of *Wilson* v. *McCoy*, 93 W. Va. 667, is cited by defendant's counsel. In that case there was a general verdict for the defendant, after a disclaimer had been filed; and the jury by the verdict found for defendant land not claimed by him.

For the errors on the trial above indicated, we will reverse the judgment, set aside the verdict of the jury, and remand the case to the Circuit Court for a new trial.

*Reversed; verdict set aside; new trial awarded.*